(26 P.3d 710)

No. 85,144

STATE OF KANSAS, *Appellee*, v. ROBERT R. GUNN, *Appellant*.

Opinion filed June 22, 2001.

*Robert A. Anderson,* of Robert A. Anderson Law Office, of Ellinwood, for the appellant.

*Douglas A. Matthews,* assistant county attorney, *Rick J. Scheufler,* county attorney, and *Carla J. Stovall,* attorney general, for the appellee.

Before KNUDSON, P.J., LEWIS, J., and WARREN M. WILBERT, District Judge, assigned.

KNUDSON, J.: Defendant Robert R. Gunn was convicted by a jury of manufacturing methamphetamine, possession of methamphetamine, and possession of drug paraphernalia. After conviction, he was sentenced to 54 months on the charge of manufacturing methamphetamine and 11 months on each of the other two charges. The sentences were ordered to run concurrently. This is a direct appeal from defendant's convictions. On appeal, defendant challenges the sufficiency of evidence to support the jury's verdicts, contends the trial court abused its discretion in limiting cross-examination, and claims prosecutorial misconduct during closing argument. We affirm.

Defendant's troubles began on Christmas day of 1998. On that date, defendant and Donna Burris went into a Coastal Mart in Great Bend to buy some starter fluid. The store cashier recognized defendant but did not know Donna Burris. Defendant, after some inquiries, purchased six cans of starter fluid, Burris picked out some food, and defendant paid for all of the items.

There had been publicity in Barton County in recent months about the number of methamphetamine labs in the area. The clerks in the various stores had been asked to watch for persons buying large quantities of certain materials that might be used in the production of methamphetamine. The store cashier knew the ether in starter fluid could be used in the manufacture of methamphetamine. Later, when two police officers came into the store, the clerk told the officers about the purchases of the starter fluid by defendant.

The two officers continued on patrol in Great Bend. They knew that the ether in starter fluid was often used as a component of homemade methamphetamine, and they were looking for defendant and Burris. As they passed a Days Inn motel, they saw an

unattended automobile with the trunk lid standing open parked in front of a room. Apparently, they were concerned a motel guest may have inadvertently failed to close the trunk on their car leaving the vehicle as an inviting target for thieves. The officers checked with the motel operator and were told it was the defendant who had been driving the car and he and another person had just checked into the motel.

The officers advised their superiors they suspected methamphetamine was being manufactured at the motel. They then made their way towards defendant's room and, as they approached it, saw that a window was open and detected a strong odor of anhydrous ammonia and ether coming from the room.

The officers then observed defendant come out of the room and walk to his vehicle. He left the door open, and through the open door they could see a sheet covering a door leading to the hallway and a towel along the bottom of the door. The odor coming from the room was overwhelming, and one of the officers had trouble breathing because of the odor.

After a time, Burris also exited the room. The police officers then contacted both defendant and Burris, who gave various explanations of what they were doing in the room and about the smell coming from the room. Defendant told the police that he and Burris had only stopped to fix their automobile. In the meantime, a search warrant had been obtained and the room was thoroughly searched.

The search yielded a number of items which fall under the description of drug paraphernalia. Among other things, there was a 64-ounce bottle containing liquid, which was still smoking when removed from a sink. This bottle was analyzed by the KBI laboratory and was found to contain anhydrous ammonia and methamphetamine. The search also revealed other components used in the manufacture of methamphetamine. After the search, defendant and Burris were taken into custody.

At the trial, a KBI forensic scientist testified that the "finished product" of methamphetamine was found in the room. The State introduced other evidence about the manufacture of methamphetamine, which explained that the manufacturing process could

begin in one location and be finished in another. In terms of time, the testimony indicated it took between 20 and 30 minutes to begin producing methamphetamine and 30 minutes to 2 hours to obtain the finished product.

Defendant was convicted as charged. Burris was also charged, tried in a separate trial, and convicted.

## MANUFACTURING METHAMPHETAMINE FOR INDIVIDUAL USE

Defendant argues the manufacture of methamphetamine does not include the manufacture of that substance for one's own personal use. He contends that the State was required to prove beyond a reasonable doubt that he was not manufacturing the methamphetamine for his own personal use. At trial, no evidence was introduced to indicate the methamphetamine seized from defendant's motel room was not manufactured for defendant's own personal use. Defendant presents as an issue whether manufacturing for one's personal use only is an element of the offense proscribed under K.S.A. 1998 Supp. 65-4159(a).

The issue raised is one of statutory interpretation which is a question of law subject to an unlimited standard of review by this court. *State v. Patterson*, 25 Kan. App. 2d 245, 247, 963 P.2d 436, *rev. denied* 265 Kan. 888 (1998).

K.S.A. 1998 Supp. 65-4159(a) states: "Except as authorized by the uniform controlled substances act, it shall be unlawful for any person to manufacture any controlled substance or controlled substance analog."

K.S.A. 1998 Supp. 65-4101(n) provides:

" 'Manufacture' means the production, preparation, propagation, compounding, conversion or processing of a controlled substance either directly or indirectly by extraction from substances of natural origin or independently by means of chemical synthesis or by a combination of extraction and chemical synthesis and includes any packaging or repackaging of the substance or labeling or relabeling of its container, *except that this term does not include the preparation or compounding of a controlled substance by an individual for the individual's own use* or the preparation, compounding, packaging or labeling of a controlled substance: (1) By a practitioner or the practitioner's agent pursuant to a lawful order of a practitioner as an incident to the practitioner's administering or dispensing of a

controlled substance in the course of the practitioner's professional practice . . . ." (Emphasis added.)

We note that in 1999, the legislature amended 65-4101(n) by adding the word "lawful" to the statute; the statute then read "by an individual for the individual's own *lawful* use." (Emphasis added.) See L. 1999, ch. 170, § 3. We, of course, are concerned with the 1998 version of the statute, but defendant contends the 1999 amendment was substantive, rather than a clarification of existing law.

K.S.A. 1998 Supp. 65-4101(n) is part of the Kansas Uniform Controlled Substances Act and does define the manufacturing of a controlled substance. However, we do not believe the exceptions contained within the statute can be considered negative elements of the criminal offense of manufacturing under K.S.A. 1998 Supp. 65-4159(a).

In *State v. White*, 213 Kan. 276, 515 P.2d 1081 (1973), the court considered a similar issue. The defendant was charged and convicted for delivering a drug, secobarbital, contrary to K.S.A. 1971 Supp. 62-2602(1). On appeal, defendant contended the trial court erred in overruling her motion for discharge because the State failed to establish a prima facie case; that is, it failed to negate the fact that she was authorized to deliver drugs. K.S.A. 1971 Supp. 65-2602(1) made unlawful the delivery of drugs unless "delivered by a practitioner in good faith and in the course of his profession practice only."

Justice Schroeder rejected defendant's claim, stating:

"The general rule has always been in Kansas that the accused has the burden of introducing evidence as a matter of defense that he is within an exception or exemption in the statute creating the offense, where such exception or exemption is not part of the description of the offense. (*State v. Braun*, 209 Kan. 181, 495 P.2d 1000 [1972], and *State v. Miller*, 127 Kan. 487, 274 Pac. 245 [1929].) Accordingly, the prosecution has no duty to prove on its case in chief that the accused is not within the exception. This is a mere rule of procedure and does not relieve the state of its burden of proving guilt. (See, *State v. Braun*, supra and cases cited therein.)" 213 Kan. at 280.

Based upon the holding in *White*, we believe the pivotal question is whether the exceptions to the definition of manufacturing in 65-

4101(n) can be said to be an integral part of the description of manufacturing in the criminal statute 65-4159(a).

Another panel of this court has considered the interplay between 65-4101(n) and 65-4159(a). In *State v. Bowen*, 27 Kan. App. 2d 122, 132, 999 P.2d 286 (2000), the defendant requested the jury be given the statutory definition of manufacturing, including the "own use" exception. The *Bowen* panel concluded:

> "[K.S.A. 1998 Supp. 65-4101(n)] appears to apply to legitimate commercial and research situations. The statute under which Bowen was charged, K.S.A. 1998 Supp. 65-4159(a), refers to the unlawful manufacture of the drug, not those situations involved in 65-4101(n). K.S.A. 1998 Supp. 65-4159(a) does not contain such an exception and does not refer to 65-4101. We believe the trial court was correct in its denial of the requested instruction." 27 Kan. App. 2d at 132.

Because the *Bowen* panel granted a new trial to the defendant on other grounds, we recognize its conclusion to be obiter dictum and in truth we have difficulty concluding 65-4101(n) does not apply to 65-4159(a).

We conclude the reasoning in *White* is applicable and dispositive of the issue before us. In the present appeal, there was no evidence whatsoever that would have factually brought defendant within the "personal use" exception of 65-4101(n). Thus, the question is whether the State should have been required to negate the personal use exception to establish a prima facie case of manufacturing methamphetamine. We conclude the answer is "no." Under *White*, a defendant has the burden of presenting evidence that would bring him or her within an exception to the act proscribed within the criminal statute, unless the exception is a part of the description of the offense. 213 Kan. 276, Syl. ¶ 3. Because the exception is not part of the offense under 65-4159(a), defendant's claim has no merit.

## SUFFICIENCY OF THE EVIDENCE

*Manufacturing of Methamphetamine*

Gunn argues even if the "personal use" exception is not an element of the crime, there is insufficient evidence upon which the jury could have convicted him of manufacturing methamphetamine. We do not agree.

The standard of review on this issue is whether, after viewing all the evidence, viewed ´n the light most favorable to the prosecution, this court is convinced a rational factfinder could find defendant guilty beyond a reasonable doubt. See *State v. Mason*, 268 Kan. 37, 39, 986 P.2d 387 (1999). Convictions may be sustained by circumstantial evidence. *State v. Clemons*, 251 Kan. 473, 488, 836 P.2d 1147 (1992).

The evidence established numerous components of a methamphetamine laboratory both in the main room and the bathroom of defendant's motel room. There was an overwhelming odor of anhydrous ammonia in the room. Defendant played an instrumental role in the purchase of the starter fluid earlier in the morning. We conclude there was sufficient evidence on which the jury could have found defendant guilty of manufacturing methamphetamine.

*Possession of Methamphetamine*

Defendant also suggests there was not sufficient evidence to find him guilty of possession of methamphetamine. We do not agree.

Defendant's argument is based on the fact that he was in nonexclusive possession of a motel room and that it was not shown that he had knowledge of the methamphetamine or sufficient control over the substance to sustain a conviction for possession. It is true that the State must show that defendant had some control over the substance and had the knowledge of and intent to have such control. *State v. Woods*, 214 Kan. 739, 744, 522 P.2d 967 (1974). However, possession and intent can be shown by circumstantial evidence. *State v. Bullocks*, 2 Kan. App. 2d 48, 49, 574 P.2d 243, *rev. denied* 225 Kan. 846 (1978). We have reviewed the record and conclude there was ample evidence on which the jury could determine that defendant possessed the methamphetamine either directly or constructively. He was present in the motel room, the bottle was found in plain view, and there was testimony that defendant had been involved in prior drug activity. We conclude that the inference of possession could be made by the jury beyond a reasonable doubt based on the evidence presented in the instant matter.

*Possession of Paraphernalia*

Defendant next argues there was not sufficient evidence to find him guilty of possession of drug paraphernalia. We do not agree.

The evidence indicates that the police officers observed defendant leaving the room and that the paraphernalia was present throughout the room and in plain view. Defendant admitted to trying to contain the odor and was involved in a purchase of six cans of starter fluid. There were also items found in the trunk of the vehicle defendant had been driving. We hold there was sufficient evidence from which the jury could have found that defendant was in possession of drug paraphernalia beyond a reasonable doubt.

## LIMITATIONS ON CROSS-EXAMINATION

Defendant next argues the trial court erred in refusing to allow him to ask questions regarding previous activities of and incidents relating to Donna Burris, his codefendant.

The admission of evidence lies within the sound discretion of the trial court, and that discretion will not be disturbed absent a showing of an abuse of that discretion. *State v. Lumley*, 266 Kan. 939, 950, 976 P.2d 486 (1999). We see no evidence of abuse of discretion in this case.

Defendant argues that his attorney attempted to ask a witness on cross-examination about the possibility of methamphetamine having been found during a body cavity search of his codefendant. This line of questioning had already been ruled to be beyond the scope of direct examination, and the State's objection to the question was sustained.

The second instance occurred when defendant's attorney asked one of the witnesses whether he knew if Burris was "into" prostitution. Once again, the State objected to the question, and the objection was sustained.

Defendant's argument appears to be that his defense was that he was in the room with Burris because she was a prostitute and that Burris had methamphetamine on her person. He suggests this defense was unconstitutionally impaired by the trial court's actions. One of the principal problems with defendant's argument is that

he made no proffer pursuant to K.S.A. 60-405 regarding the content of the evidence he sought to introduce by cross-examining the witness and what that evidence was intended to establish. K.S.A. 60-405 states:

"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless it appears of record that the proponent of the evidence either made known the substance of the evidence in a form and by a method approved by the judge, or indicated the substance of the expected evidence by questions indicating the desired answers."

The failure of defendant to make a proper proffer is fatal to his argument.

In addition, we agree the question regarding the presence of drugs in Burris' body cavities was outside of the scope of direct examination, and the objection was properly sustained. Defendant's attorney would have been able to obtain this testimony by simply placing the witness on the witness stand as part of the defense in this case. He did not do so.

## PROSECUTORIAL MISCONDUCT

Defendant argues the prosecutor committed reversible error during closing arguments.

The record shows that defendant made no contemporaneous objection to the arguments by the prosecutor. Generally, reversible error cannot be predicated upon prosecutorial misconduct during closing argument if there was no contemporaneous objection. *Lumley*, 266 Kan. at 964. We may only consider the issue if we determine that the prosecutor's remarks were outside the considerable latitude given a prosecutor in discussing the evidence and that they were so gross and flagrant as to prejudice the jury against defendant and deny him a fair trial. *State v. Sperry*, 267 Kan. 287, 308-09, 978 P.2d 933 (1999).

Defendant's argument is based on the fact the prosecutor in closing argument referred to the fact that his codefendant, Burris, had also been convicted of the same crimes. We have examined the record and find evidence of Burris' convictions had been admitted through the testimony of one of the State's witnesses on

two different occasions during cross-examination by defense counsel. The witnesses were asked if the evidence being presented at defendant's trial was the same evidence used to convict Burris. They both replied that it was basically the same evidence.

The facts upon which defendant bases his prosecutorial misconduct argument were placed in the record and before the jury by defendant's own attorney. We suggest this is tantamount to inviting the prosecutor to discuss that evidence on final argument.

During the closing argument, the prosecutor told the jury on a number of occasions that Burris had already been found guilty of these crimes; that she was a nasty person, a bad person, but that she was convicted of the very same things that defendant was on trial for. Perhaps one of the more egregious comments was "It's time for person number two to go down."

We believe the prosecutor's comments are very close to the line and may very well have been improper. However, the comments were based on evidence introduced into the case by defendant and were not objected to.

Under the circumstances, we do not consider the comments to have been so gross and flagrant as to prejudice the jury against defendant and deny him a fair trial. The remarks are also subject to a harmless error analysis. *State v. Cravatt*, 267 Kan. 314, 332, 979 P.2d 679 (1999). We conclude if the prosecutor's comments were erroneous, they were harmless error at best and would have had little, if any, likelihood of changing the result of the trial.

We conclude that any errors committed in defendant's trial, including those of prosecutorial misconduct, did not substantially prejudice defendant and did not deny him a fair trial. Defendant's arguments to the contrary are without merit.

Affirmed.

LEWIS, J.: For the reasons stated, I disagree with the majority opinion insofar as it holds that the defendant had the burden to introduce evidence to show that he did not manufacture methamphetamine for his own individual use. I therefore respectfully dissent from that portion of the majority opinion. In all other respects, I agree with the majority opinion.

I conclude that at all times relevant in this decision, an individual could not have been found guilty of "manufacturing" methamphetamine without a showing that he or she was compounding the drug for reasons other than his or her "own personal use." The defendant in this case was convicted of *manufacturing* methamphetamine in violation of K.S.A. 1998 Supp. 65-4159(a). The term "manufacturing" is a term of art that has been carefully defined by the legislature. I believe that the State was required to prove, as an element of the crime, that the defendant *manufactured* methamphetamine within the meaning of K.S.A. 1998 Supp. 65-4101(n). Under our criminal justice system, activities are only criminal if the legislature has said that such activity is a crime. At the time of the alleged occurrence, methamphetamine was not being manufactured, in the criminal sense, if it was being compounded for an individual's own personal use. To put it a different way, at the time the events in this case occurred, making methamphetamine for one's own personal use *was not* the criminal manufacture of the drug—it was a perfectly legal endeavor. For that reason, one element of the crime in question is proof that the drug was *manufactured* within the meaning of the statute. The majority concludes that the State need not prove that a defendant did not manufacture methamphetamine for his or her own personal use. I disagree. In my opinion, the majority decision relieves the State from its constitutional burden of proving all of the elements of the crime with which a defendant is charged. The majority decision violates the due process rights of the defendant guaranteed to him by the Fourteenth Amendment to the United States Constitution.

I believe the majority opinion is a bit timid in stating what is or is not *manufacturing* methamphetamine in this state at the time of the alleged criminal occurrence. It cites *State v. Bowen*, 27 Kan. App. 2d 122, 132, 999 P.2d 286 (2000), where a panel of this court concluded that K.S.A. 1998 Supp. 65-4101(n) did not apply to K.S.A. 1998 Supp. 65-4159(a). I do not agree with this conclusion of *Bowen*, and it is difficult to determine what the majority concludes on that issue. The majority is willing to say that it has "difficulty concluding 65-4101(n) does not apply to 65-4159(a)." I have no difficulty at all. In my judgment there is absolutely no question

that 65-4101(n) applies to 65-4159(a). That application and the specific definition of manufacturing is the basis for my dissent.

Defendant was charged with a violation of K.S.A. 1998 Supp. 65-4159(a), which read in part: "[I]t shall be unlawful for any person to manufacture any controlled substance or controlled analog."

Apparently, we all agree that methamphetamine is a controlled substance as that term is used in 65-4159(a).

Defendant's argument is based on the wording of K.S.A. 1998 Supp. 65-4101(n), which is in the definition section in the Kansas Uniform Controlled Substance Act, and provides:

" 'Manufacture' means the production, preparation, propagation, compounding, conversion or processing of a controlled substance either directly or indirectly by extraction from substances of natural origin or independently by means of chemical synthesis or by a combination of extraction and chemical synthesis and includes any packaging or repackaging of the substance or labeling or relabeling of its container, *except that this term does not include the preparation or compounding of a controlled substance by an individual for the individual's own use* or the preparation, compounding, packaging or labeling of a controlled substance: (1) By a practitioner or the practitioner's agent pursuant to a lawful order of a practitioner as an incident to the practitioner's administering or dispensing of a controlled substance in the course of the practitioner's professional practice; or

"(2) by a practitioner or by the practitioner's authorized agent under such practitioner's supervision for the purpose of or as an incident to research, teaching or chemical analysis or by a pharmacist or medical care facility as an incident to dispensing of a controlled substance." (Emphasis added.)

Defendant specifically references the emphasized portion of the statute which defines the term manufacture. The statute goes on to say that the manufacture of a controlled substance shall also not include the preparation, compounding, packaging, or labeling of controlled substances by certain designated medical or pharmaceutical personnel. See K.S.A. 1998 Supp. 65-4101(n)(1) and (2).

The language emphasized simply says that making a controlled substance for one's own use is *not* manufacturing that substance. It is a violation of K.S.A. 1998 Supp. 65-4159(a) to manufacture a controlled substance and, thus, the preparation or compounding of such a substance for one's own personal use is not a crime.

In 1999, the legislature amended 65-4101(n) by adding the word "lawful" to the statute. At this time, the emphasized portion of the

statute now reads "by an individual for the individual's own *lawful* use" (emphasis added) instead of "the individual's own use." K.S.A. 2000 Supp. 65-4101(n). The statute in place at the time the crimes in this case were committed did not contain the word "lawful."

In reaching my decision, I have utilized a number of the canons of statutory construction which have traditionally been used by the courts in interpreting statutes.

One of the more quoted statutory canons is that we must determine the intent of the legislature:

"A fundamental rule of statutory construction, to which all other rules are subordinate, is that the intent of the legislature governs if that intent can be ascertained. *City of Wichita v. 200 South Broadway,* 253 Kan. 434, 436, 855 P.2d 956 (1993). When a statute is plain and unambiguous, appellate courts will neither speculate as to legislative intent nor read a statute so as to add something not readily found in it. *State v. Alires,* 21 Kan. App. 2d 139, Syl. ¶ 2, 895 P.2d 1267 (1995). The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. *In re Marriage of Killman,* 264 Kan. 33, 42, 955 P.2d 1228 (1998). Legislative intent may best be determined from the plain meaning of the words used in the statute in light of all the experience available to the law-making body. *Hulme v. Woleslagel,* 208 Kan. 385, 391, 493 P.2d 541 (1972). Our construction should neither add to that which is not readily found in the statute, nor read out what, as a matter of ordinary language, is in it. See *Boatright v. Kansas Racing Com'n,* 251 Kan. 240, Syl. ¶ 7, 834 P.2d 368 (1992)." *Endorf v. Bohlender,* 26 Kan. App. 2d 855, 861-62, 995 P.2d 896 (2000).

There are many cases setting forth this rule, but I believe the *Endorf* decision satisfactorily explains what the canon of construction is and how the courts are to use it.

In addition, there are have many cases which indicate that when the language of a statute is plain and unambiguous, we are to give effect to the intention of the legislature as shown by that language rather than to determine what the law should or should not be. See *State v. Wilson,* 267 Kan. 550, 559, 987 P.2d 1060 (1999); *Link, Inc. v. City of Hays,* 266 Kan. 648, 653-55, 972 P.2d 753 (1999); *State v. Jimenez,* 266 Kan. 59, 62, 966 P.2d 60 (1998). Indeed, before we can even undertake the task of construing and interpreting a statute, we must conclude the statute is ambiguous. If it is not ambiguous, we must take the language of the statute to mean what it says, and no construction is necessary. See *State ex rel.*

*Secretary of SRS v. Miller*, 24 Kan. App. 2d 822, Syl. ¶ 2, 953 P.2d 245 (1998).

This is a criminal case, and criminal statutes are to be construed strictly against the State. Indeed, we are instructed that we may not give a different meaning to a word in a criminal statute than the meaning that word usually possesses. See *State v. Clint L.*, 262 Kan. 174, 175, 936 P.2d 235 (1997); *State v. JC Sports Bar, Inc.*, 253 Kan. 815, 818, 861 P.2d 1334 (1993); *State v. Frazier*, 248 Kan. 963, 971, 811 P.2d 1240 (1991). The results of this particular canon of construction are that we must construe the language in this statute strictly against the State and in favor of the interpretation argued for by the defendant. It further reinforces the rule that we must enforce the statute as written and cannot construe or interpret an unambiguous statute by giving different meanings to words than the meanings those words normally possess.

We are told through our canons of construction that when the legislature revises an existing law, it means something. In *Clint L.*, the court stated: " 'When the legislature revises an existing law, it is presumed that the legislature intended to change the law as it existed prior to the amendment.' *Hughes v. Inland Container Corp.*, 247 Kan. at 414." 262 Kan. at 178.

In *State v. Beard*, 197 Kan. 275, 277, 416 P.2d 783 (1966), the court stated:

"We believe that, now, no person may be prosecuted under K.S.A. 21-554 for making, issuing or delivering an insufficient or no-fund check, where either the check is postdated or the payee has information that the maker has insufficient funds on deposit in the bank to meet its payment. *As we have heretofore indicated, this represents a substantial departure from the law as it was construed in Avery. We must presume the legislature intended to effect such a change in the existing law (State, ex rel., v. Richardson, 174 Kan. 382, 386, 256 P.2d 135; Horyna v. Board of County Commissioners, 194 Kan. 445, 448, 399 P.2d 844) and that it was fully aware of the impact of the change which was made.*" (Emphasis added.)

The legislature amended the statute in question in 1999 to restrict the legal production of methamphetamine to an individual's own lawful use. L. 1999, ch. 170, § 3. We must presume this effected a substantial change in the law and that the absence of the word "lawful" in the previous form of the statute indicates that the

manufacture of methamphetamine for the individual's own use was not illegal on December 25, 1998. That is, it was not illegal to compound a controlled substance for one's own personal use; that use did not have to be lawful under our various cannons of construction. I can only conclude that in 1998, an individual was not committing a crime if that individual produced methamphetamine for his or her "own use."

The language used is plain and unambiguous. The legislature by enacting subsection (n) of 65-4101 in effect made it lawful for an individual to prepare or compound a controlled substance for the individual's own use. By the use of the word "or" in the statute, it also made it lawful for a practitioner of the medical arts or pharmaceutical arts to prepare, compound, package, or label a controlled substance without that being a crime. In neither case does the compounding of the substance constitute manufacturing under the statute.

The majority opinion relies on the decision of *State v. White*, 213 Kan. 276, 515 P.2d 1081 (1973), in concluding that the defendant would be required to prove under the circumstances shown that he was not manufacturing the methamphetamine for his individual use. The only way the majority opinion can be accurate in this regard is if proving that a controlled substance was manufactured by the defendant is *not* an element of the crime.

In *White*, the defendant was charged and convicted for delivering a drug contrary to K.S.A. 1971 Supp. 62-2602(1). On appeal, the defendant argued that the evidence did not show that she was not authorized to deliver the drugs and, as a result, it was insufficient to convict her of the crime. The Supreme Court disagreed with the defendant and held that a defendant had the burden of proving that he or she was within an exception or exemption in the statute creating the offense *"where such exception or exemption is not part of the description of the offense."* (Emphasis added.) 213 Kan. at 280.

I do not agree that *White* is controlling in this case for a number of reasons.

To begin with, a significant factor in *White* was a statute that no longer exists. The court in *White* indicated that it was relying on

its decision in *State v. Braun*, 209 Kan. 181, 189, 495 P.2d 1000, *cert. denied* 409 U.S. 991 (1972). In *Braun*, the Supreme Court established the burden of proof rule concerning exceptions which was followed by the court in *White*. The holding in *Braun* regarding the duty of the State to negate exceptions was based on K.S.A. 65-2517 (Corrick), which read as follows:

"In any complaint, information, or indictment, and in any action or proceeding brought for the enforcement of any provision of this act, it shall not be necessary to negative [*sic*] any exception, excuse, proviso, or exemption contained in this act, and the burden of proof of any such exception, excuse, proviso, or exemption shall be upon the defendant."

This statute was repealed in 1972, but in the same year was revised and enacted as K.S.A. 65-4136(a) (Weeks) under the Uniform Controlled Substances Act. See L. 1972, ch. 234, § § 36, 41.

In 1988, K.S.A. 65-4136 was restricted by the legislature to apply *only* in cases seeking forfeiture under K.S.A. 65-4135. L. 1988, ch. 258, § 2. In 1994, K.S.A. 65-4136 was simply repealed. L. 1994, ch. 239, § 28. The statutes relating to the forfeiture of property have been transferred to chapter 60 and may now be found in the Kansas Standard Asset Seizure and Forfeiture Act, K.S.A. 60-4101 *et seq.*

I believe the validity of *White* has become questionable by the repeal of the statute upon which its premise rested. I find it to be noteworthy that the legislature saw fit to repeal a statutory rule concerning the burden of proof in drug cases which was consistent with the approach taken by the majority opinion. It could be argued that having taken this action, the legislature did not intend to continue to place the burden of proving exceptions upon the defendant.

I also note that those jurisdictions which have adopted approaches similar to the majority opinion are jurisdictions which have statutory enactments which cover the burden of proof issue. See *Kelley v. State*, 448 So. 2d 500 (Ala. 1984); *State v. Huntley*, 473 A.2d 859 (Maine 1984); *State v. Wyatt*, 6 Neb. App. 586, 575 N.W. 2d 411 (1998); *State v. Stearns*, 119 Wash. 2d 247, 830 P.2d 355 (1992). In each of these cases, the state had adopted a burden

of proof statute similar to the one the Kansas Legislature has repealed.

I do not believe that *White* is relevant to the issues in this case. In *White*, the defendant was charged with and convicted of *delivery* of secobarbital. In that case, it was unlawful, by statute, to deliver secobarbital. There was no definition of the term "delivery" and nothing which indicated that what the defendant did was not delivery. The prohibited conduct in *White* was delivering the drugs and, under the statute, delivery was a crime unless it was authorized by certain individuals. The fact that it may have been authorized by certain individuals did not mean the drug was not delivered; it simply meant the delivery was not criminal. The defendant in *White* did deliver the drugs, and that action was criminal unless one of the exceptions applied. In *White*, delivery was an element of the crime which the State was required to prove.

In the instant matter, the crime is to manufacture methamphetamine. An essential element of that crime is the manufacturing of the drug as that term is defined by the statute. The State must prove that the defendant manufactured the drug in question as an element of the crime. The term manufacture is a term of art, very clearly and specifically defined by statute. Under the express terms of the applicable statutes, the compounding of methamphetamine for one's own personal use *did not constitute the manufacturing of the drug*. Under K.S.A. 1998 Supp. 65-4101(n), one could only *manufacture* an illegal substance if one compounds the substance for reasons other than individual use. The net result is that whether the defendant was *manufacturing* the drug depends upon his intent in compounding the drug. For that reason, I argue the State must prove that the defendant compounded the drug for uses other than his own individual use. If it does not prove that fact, it has not proven that he manufactured the drug as that term was defined by the statute. The State in this case offered absolutely no evidence to show why the defendant compounded the methamphetamine and, thus, in my opinion, the State failed to prove an element of the crime—that the defendant manufactured the substance as that term was used and defined by the statutes of this state.

In closing, I wish to state that I take no particular pleasure in being forced to argue that this defendant's conviction should be reversed. It is perfectly obvious that he was involved in the compounding of methamphetamine in a motel room. The question is whether his conduct was criminal. We live in a society which is governed by the rules of law. We have no common-law crimes in Kansas, and we have no crimes which are defined by public opinion or surveys. In this state, an individual's conduct, no matter how objectionable, obnoxious, or reprehensible it may be is not a crime unless the legislature says that such conduct is a crime. In this particular case, in my opinion, the legislature has stated in plain and unambiguous terms that one only manufactures methamphetamine when one compounds the substance for uses other than the individual's own personal use. The State did not prove that the methamphetamine in this case was compounded by the defendant for other than his own personal use; as a result, I am forced to conclude the evidence was insufficient to convict him of this crime and his conviction should be reversed.

On all other issues, I agree with the majority opinion.