NOT DESIGNATED FOR PUBLICATION

No. 122,605

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOSEPH W. FAGAN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Jefferson District Court; GARY L. NAFZIGER, judge. Opinion filed June 25, 2021.
Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for
appellee.

Before GREEN, P.J., SCHROEDER, J., and WALKER, S.J.

PER CURIAM: A jury sitting in the Jefferson County District Court convicted
Joseph W. Fagan of unlawful possession of a controlled substance, methamphetamine.
An off-duty Jefferson County deputy sheriff found a cigarette pack containing
methamphetamine sitting on the passenger seat of the truck that deputies found in which
Fagan was found sleeping. Fagan testified at trial and denied possessing the
methamphetamine; however, he conceded that the cigarette pack in the truck was his.
Fagan also testified that he received a conviction in a separate case for stealing the truck.
On appeal, Fagan argues insufficient evidence supports his conviction because the State

1

relied on inference stacking to prove he possessed the methamphetamine. He also argues the district court was required to provide a limiting instruction because the jury heard evidence of Fagan's conviction in Leavenworth County. Fagan's arguments are unpersuasive because the State admitted evidence that supported a reasonable inference that Fagan used methamphetamine and was in close proximity to the methamphetamine. Thus, circumstantial evidence supported his conviction beyond a reasonable doubt. Additionally, a limiting instruction was not appropriate because K.S.A. 60-455 did not apply to the evidence of the conviction in Leavenworth County. Accordingly, we affirm Fagan's conviction and sentence.

## FACTS

On the morning of October 29, 2017, Fagan lost control of his truck due to a flat tire as he drove through Leavenworth County. After the accident, Fagan knocked on front doors of nearby houses seeking help because it was cold that morning. Fagan could not find any help but he found an unlocked truck with the keys inside and drove it across the county line to a Casey's General Store (Casey's) in Oskaloosa, which is in Jefferson County. At some point Fagan fell asleep in the truck as it idled at a gas pump. A paramedic and two Jefferson County sheriff's deputies responded to the scene and tried to wake Fagan up. They next moved him from the truck to an ambulance after their attempts to wake him up failed. Fagan woke up when Eric Lang, the responding paramedic, removed Fagan from the truck and into the ambulance.

Fagan told Deputy Danny Ruff that he had been in an accident as he drove through Leavenworth County, so Deputy Ruff called the Leavenworth County Sheriff's Department to confirm that an accident occurred. At their request, Deputy Ruff transported Fagan to the county line and dropped him off with a Leavenworth County deputy for their investigation.

2

Lang knew that the truck did not belong to Fagan because he knew that Dennis Sneed owned the truck. After speaking with Sneed on the phone, Lang drove the truck to the EMT station in Oskaloosa so that Sneed could pick it up. At the EMT station, Lang and Sneed searched the truck. Lang found a cigarette pack sitting on the passenger seat of the truck. Within the cigarette pack, Lang found a dollar bill and a cellophane wrapper containing what he recognized as methamphetamine. Lang also worked as a part-time Jefferson County deputy sheriff, so he took the items into evidence.

The State charged Fagan with one count of unlawful possession of a controlled substance, methamphetamine, and misdemeanor criminal deprivation of property.

Fagan filed a pro se motion to dismiss based on an illegal search and seizure, and the district court held an evidentiary hearing. After hearing evidence, the district court denied Fagan's motion to suppress the drug evidence. But the district court dismissed the charge for criminal deprivation of property because Fagan had been convicted of theft in Leavenworth County for stealing Sneed's truck.

On January 22, 2020, the district court held a one-day jury trial. Deputy Ruff testified that he responded to a call of a suspicious parked car at a Casey's at approximately 5 a.m. on October 29, 2017. Deputy Ruff arrived at Casey's and noticed a truck parked at a gas pump. Ruff identified Fagan as the man sitting in the driver's seat of the truck and testified that he was the only person in the truck.

Ruff realized that Fagan was unresponsive, so he attempted to shake Fagan awake. Initially he believed that Fagan may have been intoxicated; however, Fagan did not smell like alcohol. Because he could not get Fagan to wake up, Deputy Ruff believed Fagan needed medical attention and called an ambulance. Ruff testified that fatigue and drowsiness were symptoms of methamphetamine use and, based on his observations of Fagan, he believed Fagan was possibly under the influence of methamphetamine.

3

Deputy Wade Noll testified that he responded to the call with Deputy Ruff and that Fagan was unresponsive at first but became responsive once he was in the cold morning air. Noll observed that Fagan seemed "out of it," and his behavior and mannerisms indicated Fagan was under the influence of alcohol or drugs.

Paramedic Lang also testified that he had received training to identify methamphetamine's side effects, which included pupillary change. Lang recalled that Fagan's pupils were equal and reactive to light, meaning his pupils responded appropriately.

Deputy Noll helped Lang searched the truck at the EMT station and found a crystal-like substance in a cellophane wrapper that was later identified by a forensic scientist as methamphetamine. The methamphetamine was inside a cigarette pack that was of the same brand as another cigarette pack taken from Fagan's pocket.

Fagan testified on his own behalf before the jury and said he had been awake for 24 hours for work and was driving on his way home when he became lost. He had pulled over at Casey's to get some rest and was awakened by Lang, but he told the deputies and Lang that he did not need medical treatment and just wanted a nap. Fagan initially testified that he could not recall whether the cigarette pack on the front seat of the truck belonged to him. But Fagan testified that the cigarette pack that was found on him was his.

On cross-examination, the prosecutor asked Fagan if someone gave him permission to use the truck. In response, Fagan initially testified that Sneed said he could use the truck. But then Fagan's testimony shifted and he admitted to theft of the truck:

> "I'm going to tell you all so the truth is out there, and I'm taking responsibility for what I've already done and took responsibility for.

4

"The meth or whatever, all that, was not mine. They took possession of the vehicle, moved it from [the] scene to another location, placed a search on it. The paramedic did—that is also a Jefferson County sheriff placed the vehicle search on the vehicle and found the substance or whatever.

"So—and, really, the cigarettes were mine. The methamphetamine was not mine. The cigarettes are mine. The methamphetamine was not mine. If they—they didn't find—like, I don't know."

The prosecutor then asked, "What's your testimony regarding [the vehicle]?" And Fagan testified, "Okay. I'm going to put this on the line, tell the truth. I already took responsibility, been already convicted and everything." He testified about crashing his own truck in Leavenworth County and then taking Sneed's truck. The State also admitted the unredacted bodycam video of Deputy Ruff to rebut Fagan's testimony and address his inconsistent statements.

Sneed testified during the State's rebuttal evidence that Lang had called to tell him that his truck had been found in Jefferson County. Sneed told Lang that he did not give anyone permission to take the truck. Sneed testified that he kept the truck at a construction site where he was building his home and the truck had been sitting in a field for a month without being driven. Sneed testified that the cigarettes were not his and the methamphetamine was not his.

After deliberating, the jury found Fagan guilty of unlawful possession of methamphetamine. At the sentencing hearing, the district court imposed a prison sentence of 34 months in prison and 12 months of postrelease supervision. Based upon Fagan's criminal history, he was presumptive for imprisonment and the district court ordered him to serve the sentence in prison.

Fagan has timely appealed from his conviction and sentence.

5

ANALYSIS

*Sufficiency of the evidence*

On appeal, Fagan first contends the evidence supporting his conviction was circumstantial and the State improperly stacked inferences to support a conclusion that Fagan possessed the methamphetamine. Specifically, Fagan argues the State asked the jury to infer that Fagan used methamphetamine based on his difficulty waking up and then infer based on that inference that he possessed the methamphetamine in the truck. He also argues that the State asked the jury to infer the methamphetamine was not in the truck before he took it and that inference was unsupported by the evidence. Fagan asks us to reverse and vacate his conviction for insufficient evidence.

The standard of review we apply to Fagan's contention is whether, after reviewing all the evidence in a light most favorable to the State, we are convinced that a rational fact-finder could have found Fagan guilty beyond a reasonable doubt. See *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). Reviewing the evidence does not include reweighing evidence, resolving evidentiary conflicts, or making witness credibility determinations. 307 Kan. at 668. Additionally, we do not distinguish between direct and circumstantial evidence in terms of probative value, and so long as the inference is reasonable, the jury has a right to make the inference. See *State v. Colson*, 312 Kan. 739, 753-56, 480 P.3d 167 (2021).

Fagan's basic legal contention is correct. While the State may rely on multiple proven circumstances to support an inference, a conviction cannot be supported by inference stacking—a presumption based on other presumptions. 312 Kan. at 750 (quoting *State v. Banks*, 306 Kan. 854, 859, 397 P.3d 1195 [2017]). Relevant to this case, the Kansas Supreme Court has held that proof of possession of a controlled substance may be established by circumstantial evidence. *State v. Washington*, 244 Kan. 652, 654,

6

772 P.2d 768 (1989) (finding sufficient evidence supported conviction of possession of heroin); *State v. Gunn*, 29 Kan. App. 2d 337, 343, 26 P.3d 710 (2001) (finding sufficient evidence of possession where defendant was in motel room with methamphetamine, container holding methamphetamine was in plain view, and defendant had been involved in prior drug activity).

Fagan was convicted of possession of methamphetamine under K.S.A. 2017 Supp. 21-5706(a), which criminalizes possession of a controlled substance. Methamphetamine is a controlled substance listed in K.S.A. 2017 Supp. 65-4107(d)(3). K.S.A. 2017 Supp. 21-5701(q) defines possession as "having joint or exclusive control over an item with knowledge of and intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." The State had to prove that Fagan knew about the nature of the methamphetamine to sustain a conviction for possession of a controlled substance. See *State v. Rizal*, 310 Kan. 199, 208, 445 P.3d 734 (2019).

Fagan's argument that the circumstantial nature of the evidence supporting possession required the jury to engage in inference stacking is unpersuasive to us. Circumstantial evidence does not exclude "every other reasonable conclusion." *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016). If the State relies solely on circumstantial evidence, then it must prove the circumstances and it cannot ask the jury to infer a circumstance based on another circumstance. *Banks*, 306 Kan. at 859. The State, in this case, provided evidence supporting the inference that Fagan possessed the methamphetamine. In similar cases our Supreme Court has also held that the State's reliance on multiple pieces of circumstantial evidence supporting a single inference does not constitute improper inference stacking. *State v. Netherland*, 305 Kan. 167, 179, 379 P.3d 1117 (2016).

Turning to his specific arguments, first, Fagan appears to argue that he was not in exclusive possession of the truck because it sat unlocked with the keys inside for a long period of time. The State, on the other hand, argues Fagan had exclusive possession of the truck and the cigarette pack inside. In this case, Fagan had exclusive possession of the truck because deputies found Fagan sleeping in the truck alone and Sneed testified that the truck sat unused at a construction site for a month. See *State v. Collins*, No. 121,112, 2021 WL 936048, at *7-8 (Kan. App. 2021) (unpublished opinion) (finding defendant had exclusive possession over a baggie where the officer watched him drop it inside a tie-down port of a truck), *rev. denied* 313 Kan. ___ (June 10, 2021). Generally, when a person is the sole occupant of a vehicle there is a logical inference that the person has control over the objects inside. *State v. Rosa*, 304 Kan. 429, 434, 371 P.3d 915 (2016). Deputy Ruff and Deputy Noll found Fagan sleeping in the truck alone, and Fagan testified that he drove the truck to Casey's. Thus, it was a logical inference that Fagan possessed the cigarette pack sitting next to him in the truck.

During closing arguments, however, the prosecutor argued that Fagan's extreme fatigue and his proximity to the cigarette pack in the truck supported a determination that Fagan knowingly possessed the methamphetamine. And on appeal, the State argues that the jury could infer Fagan knowingly possessed the methamphetamine based on his symptoms and also because Lang found the cigarette pack containing the methamphetamine on the truck seat next to where Fagan slept. So it appears the State argues the factors establishing nonexclusive possession in response to Fagan's argument. See, e.g., *State v. Abbott*, 277 Kan. 161, Syl. ¶ 5, 83 P.3d 794 (2004); see also PIK Crim. 4th 57.040 (2020 Supp.) (providing nonexhaustive list of factors that may be relevant to determine whether defendant possessed controlled substance). Courts look to multiple factors to determine if a defendant knowingly possessed an item where a vehicle is not exclusively occupied. See *Rosa*, 304 Kan. at 434 (finding sufficient evidence supporting possession). The factors relevant to this case establishing nonexclusive possession are

whether Fagan used the methamphetamine and how close Fagan was to where the methamphetamine was found. See *State v. Keel*, 302 Kan. 560, 568, 357 P.3d 251 (2015).

Sneed testified that the cigarette pack and methamphetamine were not his. Fagan confirmed on cross-examination that the cigarette pack sitting on the truck seat was his, and Deputy Noll testified that the cigarette pack on the seat matched the brand of the cigarettes found in Fagan's pocket. This evidence supported a reasonable inference that Fagan was in possession of the cigarette pack sitting next to him in the truck. See *State v. Black*, No. 120,412, 2020 WL 741528, at *4 (Kan. App. 2020) (unpublished opinion) (finding defendant possessed methamphetamine because she did not deny she possessed purse containing methamphetamine), *rev. denied* 312 Kan. 894 (2020).

Additionally, the State presented evidence supporting an inference that Fagan was under the influence of methamphetamine. See *Rosa*, 304 Kan. at 434 (one factor may not be enough to support conviction, but multiple factors may provide sufficient inference of possession). Deputies Ruff and Noll testified that they received training to recognize when someone is under the influence of drugs. Deputy Ruff testified that he could not wake Fagan, which led him to believe Fagan required medical attention. Ruff further testified that fatigue and drowsiness was a symptom of methamphetamine use and, based on his observations of Fagan, he believed Fagan was possibly under the influence of methamphetamine.

Similarly, Deputy Noll testified that Fagan seemed "out of it" and his behavior and mannerisms indicated Fagan was under the influence of alcohol or drugs. Though Lang testified that Fagan's pupils responded appropriately, he also testified that Fagan only became alert once taken out of the truck. Although this evidence alone did not support a reasonable inference that Fagan knowingly possessed the methamphetamine, testimony regarding Fagan's behavior and symptoms was not the only evidence supporting an inference of Fagan's possession. See *Chandler*, 307 Kan. at 670 ("In assessing the

9

evidence's sufficiency, we consider all the evidence at the jury's disposal."). Fagan's proximity to the cigarette pack on the truck seat is a factor establishing possession of the methamphetamine, and the State provided testimony from which the jury could infer Fagan was under the influence of methamphetamine.

The same argument of inference stacking made by Fagan in this case was made by the defendant in *State v. Bowser*, No. 119,604, 2019 WL 166540, at *3 (Kan. App. 2019) (unpublished opinion). Bowser was a passenger in a vehicle stopped for a taillight violation. After a drug-sniffing dog alerted to the presence of drugs, the vehicle was searched. Officers found a plastic mirror-like object with white residue in the glove box directly in front of Bowser, and a cut straw with white residue, which field tested positive for amphetamine, was located on the floorboard near the passenger door around Bowser's feet. After Bowser was arrested, a glass pipe with residue, which field tested positive for methamphetamine, fell out of Bowser's shirt. On appeal, Bowser relied on *Banks* to argue that the State's reliance on these various bits of evidence amount to impermissible inference stacking. The *Bowser* panel rejected that argument and held that "[i]f the State establishes more than one circumstance to meet various elements of a criminal charge, it is not stacking inferences; it is corroborating inferences." 2019 WL 166540, at *3.

In sum, the State presented numerous pieces of circumstantial evidence from which a jury could reasonably infer Fagan knowingly possessed the methamphetamine. We believe the State's presentation of those separate pieces of evidence constitute the kind of "corroborating inferences" described by the *Bowser* panel and do not represent the inference stacking proscribed by *Banks*. And viewed in a light most favorable to the prosecution, the circumstantial evidence in this case could lead a rational fact-finder to find Fagan guilty beyond a reasonable doubt of possession of methamphetamine.

*The district court's failure to give a limiting instruction*

As his second contention on appeal, Fagan argues the district court erred when it failed to include a limiting instruction for the evidence pertaining to the theft of the truck in Leavenworth County.

The standard for reviewing jury instruction issues is: (1) whether the issue was preserved for appellate review, (2) whether the instruction was legally and factually appropriate, and (3) whether any error was harmless. *State v. Barrett*, 309 Kan. 1029, 1036-37, 442 P.3d 492 (2019).

Fagan's argument has not been waived even though he failed to object to the evidence or propose the limiting instruction at trial. See *State v. Breeden*, 297 Kan. 567, 582-83, 304 P.3d 660 (2013). However, Fagan's failure to propose the instruction or object to the instructions below affects the harmlessness analysis.

Fagan argues a limiting instruction was factually appropriate because Fagan testified that he stole the truck. He also argues that because he admitted to stealing the truck in an effort to acknowledge his wrongdoing but also denied possessing the methamphetamine, a limiting instruction was appropriate to direct the jury's consideration of that testimony to assessing his credibility only. Fagan contends that an instruction was legally appropriate because the district court is required to instruct the jury on specific purposes for the admission of K.S.A. 60-455 evidence.

The State maintains that the limiting instruction was not factually appropriate because the evidence that Fagan stole the truck did not fall under K.S.A. 60-455. And the State contends a limiting instruction was not legally appropriate because the State did not admit the evidence to prove a material fact.

11

K.S.A. 2020 Supp. 60-455(a) makes evidence that a person committed a crime or civil wrong on a specified occasion inadmissible to prove that person has a disposition to commit crime or civil wrongs as the basis for an inference that the person committed another crime or civil wrong on another occasion. But this evidence may be admitted to prove "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." K.S.A. 2020 Supp. 60-455(b). A limiting instruction for K.S.A. 60-455 evidence "'eliminate[s] the danger that the evidence will be considered to prove the defendant's mere propensity to commit the charged crime.'" *State v. Butler*, 307 Kan. 831, 860, 416 P.3d 116 (2018); see also *State v. Gunby*, 282 Kan. 39, 48, 144 P.3d 647 (2006) (requiring limiting instruction informing jury of specific purpose for K.S.A. 60-455 evidence).

But our Supreme Court has also noted that a limiting instruction is not proper when the evidence of prior bad acts or crimes is not subject to K.S.A. 60-455. *State v. Gonzalez*, 307 Kan. 575, 597, 412 P.3d 968 (2018) (holding evidence was admitted independent of K.S.A. 60-455 and so no limiting instruction required). K.S.A. 2020 Supp. 60-455 does not apply to res gestae, which "'refers to acts that occurred "before, during, or after the happening of the principal occurrence when those acts are so closely connected with the principal occurrence as to form, in reality, a part of the occurrence."'" *Butler*, 307 Kan. at 861 (quoting *State v. McDaniel*, 306 Kan. 595, 616, 395 P.3d 429 [2017]). The court's holding in *Gunby* "eliminated res gestae as an *independent basis* for the admission of evidence." *State v. Peppers*, 294 Kan. 377, 389, 276 P.3d 148 (2012). But if the res gestae evidence is relevant, then it can be admitted unless a rule of evidence prevents its admission—it is not automatically inadmissible. *State v. King*, 297 Kan. 955, 964, 305 P.3d 641 (2013).

Fagan testified about his conviction in Leavenworth County, which he received for stealing Sneed's truck. And the jury watched Deputy Ruff's unredacted bodycam video to rebut Fagan's testimony. So the jury knew Fagan was detained and transported to

Leavenworth for an investigation and that Fagan did not have permission to drive the truck. But to us Fagan's argument that this evidence falls within K.S.A. 60-455 is unpersuasive, because the evidence of the truck theft and Fagan's alleged possession of methamphetamine on the truck's front seat were so closely intertwined. See *Butler*, 307 Kan. at 860 (holding K.S.A. 60-455 did not apply to certain threats because challenged threats made days before robbery were intertwined with robbery).

The evidence regarding the stolen truck explained the circumstances of Fagan's possession of the truck and the resulting search, which led to Lang, Sneed, and Deputy Noll finding the methamphetamine. The evidence assisted in the development of the facts of the case. See *King*, 297 Kan. at 963-64 (K.S.A. 60-455 does not apply when evidence at issue relates to crime committed concurrently with events surrounding crimes for which defendant is on trial). And the parties did not object to Fagan's testimony and do not argue on appeal that the evidence is otherwise inadmissible. To summarize, we believe a limiting instruction for the evidence of Fagan's Leavenworth County conviction is not appropriate because K.S.A. 60-455 does not apply.

While Fagan argues it was clear error not to include the limiting instruction, the State counters that the error is not reversible because the prosecutor did not discuss the theft in closing and Fagan did not demonstrate clear error in light of the strength of the evidence.

Because Fagan did not request the limiting instruction, this issue is reviewed under the clearly erroneous standard under K.S.A. 2020 Supp. 22-3414(3). See *State v. McLinn*, 307 Kan. 307, 317, 409 P.3d 1 (2018). This instructional error is clearly erroneous only if Fagan firmly convinces us that the jury would have returned a different verdict if the limiting instruction had been given. See *State v. Solis*, 305 Kan. 55, 65, 378 P.3d 532 (2016).

Our analysis tells us that, even if a limiting instruction was appropriate, Fagan has failed to show its omission was clearly erroneous. It is unlikely the jury used the theft of the truck to infer Fagan was guilty of possessing methamphetamine because the theft of the truck did not suggest he also possessed methamphetamine. See *Breeden*, 297 Kan. at 584 (finding prior threat made by defendant did not show defendant's propensity to commit charged crime of sodomy). Rather, Fagan admitted he took the truck to stay warm because he could not find help while out in the cold. The State also directed the jury not to consider the theft of the truck to determine whether Fagan possessed the methamphetamine. While Fagan's testimony about stealing Sneed's truck was prejudicial to Fagan, he has not met his burden to show a limiting instruction would have caused the jury to acquit him. Again, sufficient circumstantial evidence supported Fagan's conviction beyond a reasonable doubt, and Fagan admitted that the cigarette pack containing the methamphetamine was his on cross-examination.

Affirmed.