No. 40,233

STATE OF KANSAS, *Appellee*, v. CLARENCE HENRY MERRIFIELD, *Appellant.*

(303 P. 2d 155)

Opinion filed November 3, 1956.

*Ralph H. Noah,* of Beloit, argued the cause, and *Don W. Noah,* of Beloit, was with him on the briefs for the appellant.

*Terry E. Relihan,* county attorney, of Smith Center, and *John Anderson, Jr.,* attorney general, were on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: Defendant (appellant) was charged on an information containing two counts: (1) unlawfully driving a motor vehicle on the public highways and streets at a time when his operator's license stood revoked and suspended, in violation of G. S. 1949, 8-262, and (2) that defendant did unlawfully and intentionally obstruct, resist and oppose the sheriff of Smith County, and refuse to be taken into custody upon the command of the sheriff, after defendant had been placed under arrest by the sheriff, in

violation of G. S. 1949, 21-718. Defendant was tried and found guilty as charged. His motion for a new trial was denied, and he was sentenced in accordance with the statute, from which he appeals.

The facts may be briefly stated. It is conceded by all concerned that on April 5, 1955, defendant's license to drive and operate a motor vehicle upon the streets and highways was suspended for a period of six months from that date, and that both the defendant and the sheriff of Smith County were so advised. On the night of May 31, and while defendant's license stood suspended, he called the sheriff of Smith County requesting him to come to his farm to discuss the matter of his wife and step-daughter leaving him. The sheriff advised that the women were of age and he could not help him. Later that evening, defendant again called the sheriff and asked him if he could talk to him if he came in. The sheriff replied, "Sure, come on in." Defendant asked, "Where will you be?" The sheriff said, "I will be at the jail." Defendant replied, "Well, I will be in and talk to you." After the telephone conversation, the sheriff left the jail and went into town on an errand. On his way back to the jail, he saw defendant driving down the street in a pick-up truck. The sheriff followed the truck into the jail yard and parked beside defendant's truck. Defendant got out of his truck and into the sheriff's automobile. After some conversation, the sheriff asked defendant if he had a driver's license, to which he replied he did not. The sheriff told defendant that he was placing him under arrest for driving without a license and that he would have to spend the night in jail, and they would see the judge the next morning. Defendant informed the sheriff that it would be necessary to return to the farm and turn out the lights and do some other tasks, and the sheriff said he would attend to those things. Defendant and the sheriff returned to the farm in the sheriff's automobile, leaving defendant's pick-up truck parked in the jail yard. On arrival at the farm, defendant closed some of the buildings, did some other tasks and turned out several lights. After some delay, the defendant went into the house, closed the door, and the sheriff heard the latch click. The sheriff requested him to go with him and the defendant refused, stating, "Get a warrant for me and I will go with you," and further stated, "I will go with you if you get a warrant." Subsequently, a warrant was issued

and the defendant taken into custody. An information was filed, charging defendant with two misdemeanors as hereinbefore related.

It is first contended the court erred in overruling defendant's motion for discharge at the close of the state's evidence. Defendant admits his license had been suspended and that he had no legal right to drive a vehicle on the streets. However, he asserts that the sheriff knew his license had been suspended, and he told defendant he would see him at the jail if he came in; that he drove his automobile at the time and place in question at the request of the sheriff, and therefore he was not guilty of the charge. Also, he contends he was not guilty of the second count of the information for the reason that the sheriff had no authority to make an arrest for a misdemeanor without a warrant, and as there was no authorized arrest, defendant could not be guilty of obstructing, resisting and opposing the arrest.

As to defendant's first contention, G. S. 1949, 8-262, provides, in pertinent part, that it shall be unlawful for any person whose operator's license has been canceled, suspended, or revoked, to drive any motor vehicle upon the highways of this state while such license or privilege is canceled, suspended or revoked.

It is clear that the statute makes it unlawful to drive a vehicle on the highways when the license to so drive has been suspended. The legislature made no exceptions, and the question of intent is not involved, and the motive or the circumstances under which the driving took place are immaterial. The legislature may forbid the doing of an act and make its commission criminal without regard to the intent or knowledge of the doer, and where the legislative intention appears, it is incumbent upon the courts to give it effect, although the intent of the doer may have been innocent. The doing of an inhibited act constitutes the crime, and the moral turpitude or purity of motive by which it is prompted, and knowledge or ignorance of its criminal character, are immaterial circumstances on the question of guilt. (16 C. J. 76.)

The court did not err in instructing the jury that no officer, sheriff or other person, has any right or authority to authorize or direct any person to operate a motor vehicle upon the highways of Kansas during a time when such person's driver's license stands revoked, canceled or suspended.

As to defendant's second contention, it may be stated the evidence

disclosed that the commission of the offense by him was in the sight and presence of the sheriff and, under the circumstances, the sheriff had a lawful right to make the arrest without a warrant.

In *State v. Dietz*, 59 Kan. 576, 53 Pac. 870, we held, except in pursuance of the command of a warrant, a sheriff has no authority to make an arrest for a misdemeanor not committed in his presence. We recognized in that case two forms of lawful arrest: (1) Where the officer was armed with a proper warrant for arrest, and (2) what constitutes an equivalent where the misdemeanor was committed in the officer's presence. We find no authority in this state holding that a sheriff may not arrest for a misdemeanor committed in his sight and presence without a warrant.

The law is well settled in this state that in order for an officer to make a valid arrest without a warrant on the charge that the person arrested has committed a misdemeanor, the offense must have taken place in the officer's view and presence. Inasmuch as the defendant drove his automobile over the streets and highways while his license was suspended, and in the presence and view of the sheriff, the arrest by the sheriff was not only legal but proper.

Defendant next contends that the evidence will not support a conviction on count two of the information. G. S. 1949, 21-718, provides, in substance, that if any person shall knowingly and willfully obstruct, resist or oppose any sheriff in the discharge of any duty in any case, civil or criminal, other than a felony, such person shall upon conviction be adjudged guilty of a misdemeanor.

Defendant next contends that he used no force in resisting the sheriff while in his custody at the farmhouse, that he only told him he would go with him if he had a warrant. The evidence disclosed that when the sheriff asked defendant to go with him, defendant went into the house, closed the door, and the sheriff heard the latch click.

The statute does not limit the offense to resistance alone. It includes also willfull acts of obstruction or opposition, and to obstruct is to interpose obstacles or impediments, to hinder, impede or in any manner interrupt or prevent, and this term does not necessarily imply the employment of direct force, or the exercise of direct means. It includes any passive, indirect or circuitous impediments to the service or execution of process; such as hindering or preventing an officer by not opening a door. It may be stated as a general rule that under statutes containing the words "obstruct,

resist, or oppose," or the single word "resist," the offense of resisting an officer can be committed without the employment of actual violence or direct force. ( *United States v. McDonald,* 8 Biss. 439, Fed. Cas. No. 15,667, 48 A. L. R. 749; *Appling v. State,* 95 Ark. 185, 128 S. W. 866, 28 L. R. A. (NS) 548; *State v. Scott,* 123 La. 1085, 49 So. 715, 24 L. R. A. (NS) 199, 17 Ann. Cas. 400; 39 Am. Jur. 507.)

In the words of Mr. Eugene F. Ware, in a reporter's note in *State v. Lewis,* 19 Kan. 260, at page 266, it is said:

"When upon thy frame the law—places its majestic paw—tho' in innocence, or guilt—thou art then required to wilt."

The defendant by his acts of going into the house and closing the door, and refusing to go with the sheriff upon request, without a further overt act, is sufficient to support a conviction of obstructing, resisting, or opposing the sheriff in the discharge of his official duty.

Other assignments of error have been considered and, upon a careful examination of the record, we find the record neither sustains defendant's contentions nor justifies a reversal of the case.

The judgment of the trial court is affirmed.