No. 69,236

STATE OF KANSAS, *Appellant,* v. JC SPORTS BAR, INC., and JONG S. SONG, *Appellees.*

(861 P.2d 1334)

Opinion filed October 29, 1993.

*Thomas P. Alongi,* assistant county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for appellant.

*Steven L. Opat,* of Harper, Hornbaker, Altenhofen & Opat, Chtd., of Junction City, was on the brief for appellees.

The opinion of the court was delivered by

HOLMES, C.J.: The State of Kansas appeals upon a question reserved from a decision of the district court in which the defendants, JC Sports Bar, Inc., and Jong S. Song, were each acquitted of one count of violating K.S.A. 1992 Supp. 41-2615(a). The appeal is denied.

K.S.A. 1992 Supp. 41-2615 provides:

"(a) No licensee or permit holder, or any owner, officer or employee thereof, shall knowingly or unknowingly permit the consumption of alcoholic liquor or cereal malt beverage by a minor on premises where alcoholic beverages are sold by such licensee or permit holder.

"(b) Violation of this section is a misdemeanor punishable by a fine of not less than $100 and not more than $250 or imprisonment not exceeding 30 days, or both."

In a trial to the district magistrate judge, both defendants were found guilty as charged. On appeal to the district judge pursuant to K.S.A. 22-3609a, both defendants were acquitted, and the State has now appealed.

Before the district judge the case was submitted on the transcript of the proceedings before the district magistrate judge, stipulations, briefs, and arguments of counsel. The facts are uncontroverted.

In the early morning hours of May 2, 1992, Wayne A. Weibel, a liquor control investigator for the Alcoholic Beverage Control Division of the State Department of Revenue, and Lieutenant Al Boskey, of the Geary County Sheriff's Office, were conducting random bar checks in Junction City. While looking through the front windows of the JC Sports Bar, the officers observed Thomas K. Hoffman, a minor, pick up a white plastic cup and drink from it. Lt. Boskey recognized Hoffman and knew that he was a minor. Hoffman had been playing pool with an acquaintance who had left the bar shortly before, leaving a partial cup of beer on an unoccupied table. After Hoffman took a drink from the cup, Weibel and Boskey entered the bar, took possession of the cup and its contents, and issued Hoffman a misdemeanor citation. The cup contained beer, a cereal malt beverage specified in the statute, K.S.A. 1992 Supp. 41-2615(a). Hoffman later pled guilty and testified for the State in this proceeding.

The JC Sports Bar is owned by the defendant JC Sports Bar, Inc., which is the holder of a cereal malt beverage license for the premises. The defendant Jong S. Song is the owner of the corporation. Agent Weibel testified that at the time the officers observed Hoffman's activities, Mr. Song was also standing on the sidewalk outside the bar. The evidence is uncontroverted that neither Song nor any employee or agent of JC Sports Bar, Inc., sold or gave Hoffman the beer which Hoffman drank. There was no evidence that Song or any employee of the bar even knew that Hoffman had taken a drink of someone else's beer.

JC Sports Bar, Inc., and Jong S. Song were both charged with one count of "knowingly or unknowingly" permitting the con-

sumption of a cereal malt beverage by Thomas K. Hoffman, a minor. On appeal de novo from the district magistrate judge, the district judge received and reviewed the trial transcript, briefs, and stipulations and thereafter on December 23, 1992, heard arguments of counsel based upon the record submitted. Following argument, the court made the following findings and rulings:

"All right. The Court has examined both the facts from the transcript that was presented and has acknowledged—or has noticed—noted those facts— excuse me—as they were recited in the briefs.

"Court would find that . . . there was a juvenile inside of the premises; that—that's not alleged to have been any violation, for the juvenile to be on the premises.

"The premises sold cereal malt beverages. The—the cereal malt beverage is alleged to have been sold to some other person inside this tavern.

"At the—at some point in time, two officers were outside the premises on the sidewalk and through the window viewed this juvenile take a drink from a foam cup or a container of some sort, and then proceeded into the tavern to apprehend the young man, and I believe he was prosecuted for that offense.

"As to where the owner or manager or anyone was at that point in time, one officer stated that it was his recollection that that person or that owner who was operating the tavern was outside the premises, with them, on the sidewalk at that time, and those are the facts which were established by the transcript which I read.

"The Court would find that 41-2615 requires that, for there to be a violation, by licensee or permit holder where alcoholic beverages are sold or cereal malt beverages are sold, that no licensee or permit holder or any owner or officer shall knowingly or unknowingly permit the consumption of alcoholic liquor.

"Now, emphasis by the briefs has been arguing the question of whether or not it was knowingly or unknowingly permitted.

"Court finds that, from the evidence, there is no evidence that it was either knowingly or unknowingly permitted, because there is no evidence that it was, in fact, permitted, whether knowingly or unknowingly.

"And since there was no act which was actually done by the owner or any representative or agent of the tavern or licensee, the Court finds that the—that constitutionally this person—or, neither the person, the corporation, or the bar itself, or the owner thereof or the operator thereof can be charged in this particular instance with this particular offense and would enter a finding of not guilty, because there was no actual permission or act of permission, whether it was knowingly or unknowingly, that has been shown by the evidence in this case, and that is the Court's finding and the reason for the Court's finding."

In the journal entry signed by the district judge and approved by counsel for all parties, the court's conclusions of law were summarized as follows:

"(1) K.S.A. 41-2615 requires, as an element of proof, evidence constituting an act which falls within the statutory language '. . . knowingly or unknowingly permit . . .';

"(2) that there is no evidence that the owner or any employee of the bar committed any act 'knowingly or unknowingly';

"(3) that because there was no illegal act committed by the owner (licensee) or agent (employee), there is no act which constitutes any conduct which falls within the statutory language of 'knowingly or unknowingly permit';

"(4) therefore, there was no criminal violation of the law by any party other than the minor Thomas Hoffman."

The issue now before the court is whether the language "knowingly or unknowingly permit" as set forth in K.S.A. 1992 Supp. 41-2615(a) imposes an absolute duty to prohibit the consumption of alcoholic liquor or cereal malt beverage by minors on a licensee's premises. Or stated another way, does the statute create an absolute liability offense?

Before addressing the issue of whether the district court erred in its interpretation of K.S.A. 1992 Supp. 41-2615(a), we reiterate some of the cardinal rules of statutory construction. " 'Interpretation of a statute is a question of law.' " *Todd v. Kelly,* 251 Kan. 512, 515, 837 P.2d 381 (1992). "When determining a question of law, this court is not bound by the decision of the district court." *Memorial Hospital Ass'n, Inc. v. Knutson,* 239 Kan. 663, 668, 722 P.2d 1093 (1986). "Our criminal statutes are to be construed strictly against the State." *State v. Sexton,* 232 Kan. 539, 543, 657 P.2d 43 (1983).

"The fundamental rule of statutory construction is that the purpose and intent of the legislature governs when the intent can be ascertained from the statute. . . . When the legislature revises an existing law . . . it is presumed that the legislature intended to make some change in the law as it existed prior to the amendment." *State v. Adee,* 241 Kan. 825, 829, 740 P.2d 611 (1987).

Finally, K.S.A. 1992 Supp. 77-201 *Second* states:

"Words and phrases shall be construed according to the context and the approved usage of the language, but technical words and phrases, and other words and phrases that have acquired a peculiar and appropriate meaning

in law, shall be construed according to their peculiar and appropriate meanings."

In this case, the State contends the district court erred in its interpretation and application of the language in the statute involved which, for convenience, will be repeated here. K.S.A. 1992 Supp. 41-2615 provides:

"(a) No licensee or permit holder, or any owner, officer or employee thereof, shall *knowingly or unknowingly permit* the consumption of alcoholic liquor or cereal malt beverage by a minor on premises where alcoholic beverages are sold by such licensee or permit holder.

"(b) Violation of this section is a misdemeanor punishable by a fine of not less than $100 and not more than $250 or imprisonment not exceeding 30 days, or both." (Emphasis added.)

The State contends that the plain language of the statute imposes an absolute duty upon drinking establishments and their owners, officers, and employees to prohibit the consumption of alcoholic beverages by minors on the licensed premises.

Both parties rely primarily upon *State v. Sleeth*, 8 Kan. App. 2d 652, 664 P.2d 883 (1983), which involved a violation of the pre-1987 version of the same statute. Although the statute has been amended, the case is relevant because the specific language now before us has remained constant. The pre-1987 version of 41-2615 provided:

"No club licensed hereunder shall *knowingly or unknowingly permit* the consumption of alcoholic liquor or cereal malt beverage on its premises by a minor and no minor shall consume or attempt to consume any alcoholic liquor or cereal malt beverage while in or upon the premises of a club licensed hereunder or as prohibited by K.S.A. 41-715 and any amendments thereto. The owner of any club, any officer or any employee thereof, who shall permit the consumption of alcoholic liquor or cereal malt beverage on the premises of the club by a minor shall be deemed guilty of a misdemeanor and upon conviction shall be subject to the same penalty as prescribed by K.S.A. 41-715 for violation of that section." (Emphasis added.)

In *Sleeth*, the defendant-owner was appealing her conviction for a violation of K.S.A. 41-2615. Although the defendant was not present during the violation, the State attempted to impute criminal liability to her for the act of an employee of the club. The court initially recognized that the statute contained a regulatory provision as to a club in sentence one and a penal provision as to an owner, officer, or employee in the second sentence.

The issue in the case was whether the penal provision of the statute could be "invoked against a club owner who was not present at, had no knowledge of, and did not consent to or authorize" the violation. 8 Kan. App. 2d at 654. In determining that the application of the penal provision was improper, the court focused first on the regulatory provision and the language "knowingly or unknowingly permit." In considering this language, the court stated: "Knowledge of the infraction is not a prerequisite to holding a 'club' liable for a transgression of this provision." However, in its discussion of the penal provision of the statute, the court stated: "The omission of the phrase 'knowingly or unknowingly' from the second sentence of the statute is a clear indication of the legislative intent to infuse that penal provision with a scienter [knowledge] requirement." 8 Kan. App. 2d at 656.

The Court of Appeals reconfirmed its holding in *Sleeth* four years later when dealing with a related issue involving K.S.A. 41-2615. In *Sanctuary, Inc. v. Smith,* 12 Kan. App. 2d 38, 733 P.2d 839 (1987), a private club was trying to recover for the civil penalty imposed upon it for violating K.S.A. 41-2615. Sanctuary, Inc., argued that the civil penalties should be recoverable from the minor who fraudulently gained entry to the club. The Court of Appeals disagreed, however, stating: "The regulatory provisions of K.S.A. 41-2615 would be rendered less than strict if private clubs could pass on the costs of 'unknowing' violations to minors in suits for fraud." 12 Kan. App. 2d at 39. In relying on *Sleeth,* the court noted: "Our legislature has adopted a strict regulatory policy by imposing upon private clubs an *absolute duty* not to permit minors to consume alcoholic beverages on their premises. (Emphasis added.) 12 Kan. App. 2d at 39. While *Sleeth* involved a criminal prosecution, it should be noted that the actual discussion and application of the words "knowingly or unknowingly permit" were in the context of civil regulation under the alcoholic beverage laws in both *Sleeth* and *Sanctuary, Inc.*

Although the rulings in both *Sleeth* and *Sanctuary, Inc.,* involve the earlier version of K.S.A. 41-2615, the relevant language has not changed. The primary changes made to K.S.A. 41-2615 in the 1987 amendment were two-fold. First, the amendment broadened the scope of the language "knowingly or unknowingly

permit" to include all violators of the statute. Prior to 1987, only a "club" was subject to the *Sleeth* standard of absolute liability. And as noted in *Sleeth*, the punishment rendered against a club was not criminal in nature. Instead, a club was subject to license revocation proceedings as called for in K.S.A. 41-2611(b). 8 Kan. App. 2d at 656. Additionally, clubs were subject to civil penalties pursuant to K.S.A. 41-2633a. Second, and more importantly in the present case, the 1987 amendment expanded criminal liability to apply to all violators of the statute—whether the violation was "knowingly or unknowingly" permitted. Under K.S.A. 1992 Supp. 41-2615(b), violators are subject to a fine or imprisonment or both. As a result, the statute must be considered from the stricter standards applied to criminal statutes rather than the more liberal standards applied to non-criminal statutes.

In considering the statute now before us, we must determine whether the use of the words "knowingly or unknowingly permit" contemplates something other than strict or absolute liability. Our research indicates there is no legislative history which sheds any light upon this particular language or why it was used in this statute. As previously indicated, criminal statutes must be strictly construed. Our most recent pronouncement of this rule was in *State v. Donlay*, 253 Kan. 132, Syl. ¶ 3, 853 P.2d 680 (1993), wherein we stated:

> "The general rule is that a criminal statute must be strictly construed in favor of the accused, which simply means that words are given their ordinary meaning. *Any reasonable doubt about the meaning is decided in favor of anyone subjected to the criminal statute.*" (Emphasis added.)

In *State v. Merrifield*, 180 Kan. 267, 303 P.2d 155 (1956), we recognized that the legislature has the power to enact criminal statutes which create absolute liability offenses requiring no knowledge or intent on the part of the accused. In *Merrifield*, which involved a drivers' license violation, this court stated:

> "The legislature may forbid *the doing of an act* and make its commission criminal without regard to the intent or knowledge of the doer, and where the legislative intention appears, it is incumbent upon the courts to give it effect, although the intent of the doer may have been innocent. *The doing of an inhibited act* constitutes the crime, and the moral turpitude or purity of motive by which it is prompted, and knowledge or ignorance of its criminal character, are immaterial circumstances on the question of guilt." 180 Kan. at 269. (Emphasis added.)

The legislature has codified the foregoing principle as to misdemeanor and traffic offenses in K.S.A. 21-3204, which provides:

"A person may be guilty of an offense without having criminal intent if the crime is a misdemeanor or traffic infraction *and the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described.*" (Emphasis added.)

The State argues that the plain language of K.S.A. 1992 Supp. 41-2615(a) imposes an absolute duty upon drinking establishments and their owners, officers, or employees to prohibit consumption of alcohol by minors. The defendants, however, contend that the words "knowingly or unknowingly permit" require some act or affirmative failure to act before there can be a violation of the statute. Black's Law Dictionary 1140 (6th ed. 1990) defines permit as "To suffer, allow, consent, let; to give leave or license; to acquiesce, by failure to prevent, or to expressly assent or agree to the doing of an act."

In addition to *Merrifield,* defendants cite *State v. Riedl,* 15 Kan. App. 2d 326, 807 P.2d 697 (1991) (application of compulsion defense to an absolute liability driving offense); *City of Wichita v. Hull,* 11 Kan. App. 2d 441, 724 P.2d 699 (1986) (driving under the influence); and *City of Overland Park v. Estell,* 8 Kan. App. 2d 182, 653 P.2d 819 (1982) (leaving the scene of an injury accident), for the argument that some action is required, even in an absolute liability offense. In *Merrifield,* the court referred to "the doing of an act" in applying absolute liability to the driver in that case.

The JC Sports Bar was a legitimate and legal business operating under the statutes of the State of Kansas. To carry the State's argument to its ultimate conclusion would mean that every investor in, or owner of, a drinking establishment, no matter how small the interest, could be held criminally liable for a minor's violation of the law even if that investor or owner had never been on the premises and had no say in its control or operation. We do not believe the legislature had any such intention. Here, although the defendant Song was just outside his bar on the sidewalk, he could just as well have been home in bed. Where are we to draw the line?

While it is true that in *Sleeth* the Court of Appeals found the words "knowingly or unknowingly permit" created absolute liability and that knowledge of the infraction was not required and that the Court of Appeals apparently affirmed that position in *Sanctuary, Inc.*, those cases involved civil liability and were decided under a more liberal standard than must be applied to the present statute.

It appears to us that the legislature in adopting the language "knowingly or unknowingly permit" intended some action or inaction of a greater magnitude than merely opening for business on the night in question, which allowed the prohibited conduct to occur before criminal liability would attach. Does the statute clearly indicate a legislative purpose to impose absolute liability as required by K.S.A. 21-3204? We think not. If that had been the intent, it would have been a simple matter to write the statute accordingly. Unless some limitation on criminal liability was intended, there would have been no need to include the questioned language. As the statute creates a reasonable doubt as to its meaning and intent, those doubts must be resolved in favor of the defendants here.

We conclude that K.S.A. 1992 Supp. 41-2615(a) does not establish absolute liability under the facts of this case and does not clearly indicate a legislative purpose to do so. In view of the result reached, it is not necessary that we consider the other arguments of the defendants, including the effect, if any, of K.S.A. 41-904 on the statute under consideration.

The appeal is denied.