(311 P.3d 1147)
No. 108,788

MCJS, Inc., dba Reed's Ringside Sports Bar and Grill, *Appellant*, v. Kansas Department of Revenue, *Appellee*.

Opinion filed October 25, 2013.

*William K. Rork* and *Jacob Conard*, legal intern, of Rork Law Office, of Topeka, for appellant.

*Sarah Byrne,* assistant attorney general, Alcoholic Beverage Control, Kansas Department of Revenue, for appellee.

Before MALONE, C.J., PIERRON and HILL, JJ.

MALONE, C.J.: This is a civil regulatory proceeding in which the Kansas Department of Revenue Division of Alcoholic Beverage Control (ABC) fined MCJS, Inc., dba Reed's Ringside Sports Bar and Grill (Reed's) $500 for violating K.S.A. 41-2615 by permitting a minor to possess or consume alcohol on its premises. The Director of the ABC (Director) found that Reed's is responsible for ensuring that minors do not possess or consume alcoholic beverages on its premises and that K.S.A. 41-2615 creates absolute civil liability on a licensee for any violation of the statute. Reed's appealed without success to the Secretary of the Department of Revenue (Secretary) and then to the district court.

Reed's now appeals to this court, claiming that the agency and the district court erred in finding that K.S.A. 41-2615 imposes strict liability on a licensee and in finding that the minor possessed or consumed alcohol on its premises. In the context of a civil regulatory proceeding, we conclude that the agency and the district court did not err in finding that K.S.A. 41-2615 imposes strict liability on a licensee such that the statute is violated whenever a minor possesses or consumes alcohol on its premises. We also conclude that the evidence was sufficient to support a finding that the minor possessed or consumed alcohol on Reed's premises. Thus, we affirm the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 3, 2010, Potawatomi Tribe Police Officer Darrel Chapman was involved in a high-speed pursuit of Kipp Shupe, who was 17 years old at the time. After Chapman took Shupe into custody, he learned that Shupe had been with his friend, Jonathan Bourdon, earlier that night drinking beer at Reed's. Bourdon confirmed this information.

On July 28, 2010, the ABC issued an administrative citation to Reed's, asserting that Reed's violated K.S.A. 41-2615 by permitting

an underage person to possess or consume alcohol on its premises. Reed's timely requested an evidentiary hearing before the Director. At the evidentiary hearing, the ABC called Chapman who testified about Shupe's arrest on July 3, 2010, and Shupe's statement that he had been drinking beer at Reed's earlier that night. Next, Bourdon testified that on the night in question, he was at Reed's with Shupe. Bourdon testified that he and Shupe played games and drank beer together. Bourdon further testified that Shupe purchased some of the beer that night. However, Bourdon later clarified that he did not see Shupe purchase the beer; rather, he saw Shupe come back from the general direction of the bar with a pitcher of beer in his hand. Bourdon also stated that Reed's employees would come around periodically to clear their table. Bourdon testified that no employee asked him for identification when he purchased the beer or asked Shupe for identification while he was drinking at the table.

When Shupe testified, he admitted being at Reed's with Bourdon on the night in question and that, while driving to Reed's, he had drunk four beers in his vehicle. Once at Reed's, Shupe stated that he bought two pitchers of beer, one from the bartender and one from a waitress, and he was not asked for identification either time. Further, Shupe testified that there were always employees walking around the bar and, although he was clearly drinking beer, no one asked him for identification. On cross-examination, Shupe admitted that his first written statement to the police said nothing about him purchasing beer, although his second written statement mentioned purchasing one pitcher of beer. On redirect, Shupe stated that he believed the difference in the statements stemmed from the fact that he was still intoxicated when he wrote the first statement.

Damon Reed, half-owner of MCJS, Inc., which did business as Reed's, testified that the first he knew of the allegation that Reed's had violated the statute regarding alcohol consumption by a minor was when he received something in the mail. Damon stated that there was video footage of the inside of the bar taken by multiple cameras, but the footage was only stored for 14 days. Damon testified that it was Reed's policy that everyone purchasing beer

should be asked for identification. Derrick Reed, the other half-owner of Reed's, testified that there was no longer video of the night in question because he did not become aware of the incident until over 30 days later.

After the hearing, both parties filed written closing comments. In its closing, Reed's emphasized the inconsistencies in Shupe's and Bourdon's stories and the unfairness of the delayed notification of Reed's, stating that if Reed's had known of the allegation sooner, it could have preserved the videotapes of the night in question. Reed's also argued that there was insufficient evidence to prove the violation, claiming that Reed's had no criminal intent and that K.S.A. 41-2615 does not create a strict liability offense. Finally, Reed's contended that none of its employees had "permitted" Shupe to consume alcohol. The ABC's written closing arguments, on the other hand, asserted that K.S.A. 41-2615(a) imposes absolute liability on the licensee. The ABC contended that the evidence clearly established that Shupe consumed alcohol at Reed's on the night in question and the evidence was sufficient to justify a civil penalty.

The Director issued written findings and an order dated August 9, 2011. The Director found that "[t]he fact that Shupe had consumed beer at the licensed premises was established during the hearing. Reed's employees delivered pitchers and cups to the table where Shupe was obviously in possession of and consuming beer." The Director noted that K.S.A. 41-2615 provides that a licensee may not knowingly or unknowingly permit possession or consumption of alcohol by a minor on the licensed premises. The Director stated that "[i]f knowledge or intent were a required element for an administrative violation, compliance with underage laws would deteriorate because the motivation to proactively check IDs would disappear." The Director determined that "Reed's is responsible for ensuring that minors do not possess or consume alcoholic beverages [on the premises] and that K.S.A. 41-2615 creates absolute civil liability on a licensee for any violation of the statute." Accordingly, the Director concluded that Reed's had violated the statute and imposed a $500 fine as a civil penalty for the violation.

Reed's appealed to the Secretary, and both parties submitted their appellate arguments in writing. Reed's again claimed that the inconsistent nature of Shupe's and Bourdon's statements meant that there was insufficient evidence to find Reed's violated the statute. Reed's also argued that it did not "permit" Shupe to possess or consume alcohol on its premises. Reed's argued that its ability to control Shupe's drinking was limited because it was impossible to continuously monitor every patron and, if Shupe was drinking, he was likely trying to hide it. Reed's also argued that its exemplary record of enforcing alcohol control laws, as evidenced by multiple letters of commendation from the ABC, showed it did not acquiesce in Shupe's drinking. Finally, Reed's argued that public policy went against imposing absolute liability for violations of K.S.A. 41-2615.

The ABC reasserted its argument that the Director's finding that Shupe possessed and consumed alcohol at Reed's was based on substantial competent evidence, regardless of the inconsistencies in some of the details of Bourdon's and Shupe's testimony. The ABC also contended that the department can impose either civil or criminal sanctions for a violation of K.S.A. 41-2615 and that in the context of a civil regulatory proceeding, the statute imposes strict liability on a licensee any time that a minor possesses or consumes alcohol on its premises. The ABC asked the Secretary to uphold the $500 civil penalty that the department had assessed against Reed's.

On December 2, 2011, the Secretary issued his final order and upheld the findings of the Director. On the issue of whether K.S.A. 41-2615 imposes absolute liability on a licensee, the Secretary concluded:

"After considering this issue, the Secretary is persuaded the Department's position is correct. While K.S.A. 41-2615(b) clearly imposes sanctions under criminal law, subsection (a) of the statute is also used as a basis for the imposition of civil sanctions. Given the dual nature of the statute, it is logical that criminal and civil authorities may interpret and apply the statute differently. Licensee is operating a business in a highly regulated industry, and the history of K.S.A. 41-2615 supports the Department's contention the legislature intended to impose an absolute civil liability on licensees."

On January 3, 2012, Reed's filed its petition for judicial review in Shawnee County District Court. Reed's alleged that the Secretary erroneously interpreted or applied the law and that the decision was based on a determination of fact not supported by sufficient evidence. The ABC filed its response, and the district court filed a memorandum decision and order on August 22, 2012. The district court found that Kansas appellate courts have already interpreted K.S.A. 41-2615 to impose an absolute duty on a private club to not permit the consumption of alcoholic beverages by a minor on its premises. Further, the district court held that, although the testimony may have been inconsistent or contradictory, the district court could not reweigh the evidence. The district court found there was sufficient evidence to support the agency's ruling. Thus, the district court affirmed the Secretary's decision. Reed's filed a motion to reconsider which the district court denied. Reed's timely appealed the district court's judgment.

On appeal, Reed's claims that the agency and the district court erred in finding that K.S.A. 41-2615 imposes strict liability on a licensee such that the statute is violated whenever a minor possesses or consumes alcohol on the licensee's premises. Next, Reed's claims that even if K.S.A. 41-2615 imposes strict liability on a licensee, there was insufficient evidence to support a finding that Shupe possessed or consumed alcohol at Reed's on the night in question. We will address each of these claims in turn.

## STRICT LIABILITY UNDER K.S.A. 41-2615

Reed's primary argument is that the agency and the district court erred in finding that K.S.A. 41-2615 imposes strict liability on a licensee such that the statute is violated whenever a minor possesses or consumes alcoholic liquor or a cereal malt beverage on the licensee's premises. Reed's contends that the use of the word "permit" in the statute precludes such an interpretation because the statute requires the licensee to *permit* the minor to possess or consume the prohibited beverage. Relying on prior caselaw to define "permit," and distinguishing the cases upon which the district court relied, Reed's asserts that a plain reading of the statute supports its position. Because the agency and the district court did not

find that Reed's or any of its employees *permitted* Shupe to possess or consume alcohol on its premises, Reed's concludes that the agency and the district court erred in finding that it violated the statute.

The ABC contends that the Department can impose either civil or criminal sanctions for a violation of K.S.A. 41-2615 and that in the context of a civil regulatory proceeding, the statute imposes strict liability on a licensee whenever a minor possesses or consumes alcohol on its premises. The ABC argues that the evidence was sufficient to uphold the $500 civil penalty that the Department assessed against Reed's.

An appeal from the Secretary's final order is subject to judicial review under the Kansas Judicial Review Act (KJRA). K.S.A. 2012 Supp. 77-603(a). The burden of proving the invalidity of the agency action rests on the party asserting the invalidity. K.S.A. 2012 Supp. 77-621(a). The scope of appellate review is governed by K.S.A. 2012 Supp. 77-621(c)(4), which states that this court shall grant relief if it determines that "the agency has erroneously interpreted or applied the law." Previously, Kansas courts generally showed deference to an administrative agency's interpretation of a statute that the agency administers. See, *e.g.*, *Coma Corporation v. Kansas Dept. of Labor*, 283 Kan. 625, 629, 154 P.3d 1080 (2007). As both parties here recognize, however, the Kansas Supreme Court no longer extends such deference to an agency's statutory interpretation. See, *e.g.*, *In re Tax Appeal of LaFarge Midwest*, 293 Kan. 1039, 1044, 271 P.3d 732 (2012). Because this issue depends upon statutory interpretation, which is a question of law, this court's review is unlimited. See *Milano's Inc. v. Kansas Dept. of Labor*, 296 Kan. 497, 500, 293 P.3d 707 (2013).

" 'When courts are called upon to interpret statutes, the fundamental rule governing our interpretation is that "the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted." [Citation omitted.] For this reason, when the language of a statute is plain and unambiguous, courts "need not resort to statutory construction." [Citation omitted.] Instead, "[w]hen the language is plain and unambiguous, an appellate court is bound to implement the expressed intent." [Citation omitted.]' " 296 Kan. at 500-01.

The statute at issue here is part of the statutory scheme governing the licensure and regulation of the sale of liquor by the drink. See K.S.A. 41-2601 *et seq.* K.S.A. 2012 Supp. 41-2615 states as follows:

"(a) No licensee or permit holder, or any owner, officer or employee thereof, shall knowingly or unknowingly permit the possession or consumption of alcoholic liquor or cereal malt beverage by a minor on premises where alcoholic beverages are sold by such licensee or permit holder, except that a licensee's or permit holder's employee who is not less than 18 years of age may serve alcoholic liquor or cereal malt beverage under the on-premises supervision of the licensee or permit holder, or an employee who is 21 years of age or older.

"(b) Violation of this section is a misdemeanor punishable by a fine of not less than $100 and not more than $250 or imprisonment not exceeding 30 days, or both.

"(c) It shall be a defense to a prosecution under this section if: (1) The defendant permitted the minor to possess or consume the alcoholic liquor or cereal malt beverage with reasonable cause to believe that the minor was 21 or more years of age; and (2) to possess or consume the alcoholic liquor or cereal malt beverage, the minor exhibited to the defendant a driver's license, Kansas nondriver's identification card or other official or apparently official document that reasonably appears to contain a photograph of the minor and purporting to establish that such minor was 21 or more years of age."

K.S.A. 2012 Supp. 41-2615(b) provides that a violation of the statute is a misdemeanor criminal offense. However, K.S.A. 41-2633a authorizes civil enforcement of the statute and a civil fine not exceeding $1,000 for each violation of any statute regulating the sale of liquor by the drink. See also K.A.R. 14-16-15 and K.A.R. 14-16-25(b) (regulations concerning civil enforcement of statutes regulating sale of liquor).

The key statutory language at issue in this case is found at K.S.A. 2012 Supp. 41-2615(a) which provides that "[n]o licensee or permit holder, or any owner, officer or employee thereof, shall *knowingly or unknowingly permit* the possession or consumption of alcoholic liquor or cereal malt beverage by a minor on premises where alcoholic beverages are sold by such licensee or permit holder . . . ." (Emphasis added.) Caselaw interpreting and applying this statutory language is rare, but both parties discuss *State v. Sleeth*, 8 Kan. App. 2d 652, 664 P.2d 883 (1983), and *Sanctuary, Inc. v. Smith*, 12 Kan. App. 2d 38, 733 P.2d 839 (1987), which examined a prior version of K.S.A. 41-2615(a).

In *Sleeth,* Darlene Sleeth was the owner and operator of the Tiger Island private club. In January 1982, a customer under the legal drinking age consumed an alcoholic beverage at Tiger Island. During a routine age check, Junction City police officers discovered the customer was underage and arrested him; he subsequently pled guilty to possession of an alcoholic beverage by a minor. Although she was not present and did not consent to the minor's purchase or consumption of the beverage, Sleeth was charged with sale of an alcoholic beverage to a minor, in violation of K.S.A. 41-2615. The district court found Sleeth guilty, sentenced her to 15 days in jail, and fined her $100. Sleeth appealed, arguing that her conviction could not be sustained in light of the fact that she was not present at, had no knowledge of, and did not consent to or authorize the sale of alcohol to a minor.

As it existed at the time, K.S.A. 41-2615 provided:

" 'No club licensed hereunder shall knowingly or unknowingly permit the consumption of alcoholic liquor or cereal malt beverage on its premises by a minor and no minor shall consume or attempt to consume any alcoholic liquor or cereal malt beverage while in or upon the premises of a club licensed hereunder or as prohibited by K.S.A. 41-715 and any amendments thereto. The owner of any club, any officer or any employee thereof, who shall permit the consumption of alcoholic liquor or cereal malt beverage on the premises of the club by a minor shall be deemed guilty of a misdemeanor and upon conviction shall be subject to the same penalty as prescribed by K.S.A. 41-715 for violation of that section.' " 8 Kan. App. 2d at 654.

On appeal, this court examined the statute and found that it was neither purely penal nor purely regulatory but was a hybrid. 8 Kan. App. 2d at 655. The first sentence of the statute was directed at "clubs," which cannot be punished criminally; therefore, that portion was regulatory. 8 Kan. App 2d at 655-56. The second sentence of the statute, however, was aimed at people—owners, officers, or employees of a club—and made violation of its terms a misdemeanor; thus, the second sentence was penal. 8 Kan. App. 2d at 656. The *Sleeth* court noted that the second sentence did not contain the "qualifying phrase 'knowingly or unknowingly.' " 8 Kan. App. 2d at 656. Defining permit as to expressly or formally consent, to allow, to tolerate, or to authorize, the court found that "[t]he

omission of the phrase 'knowingly or unknowingly' from the second sentence of the statute is a clear indication of a legislative intent to infuse that penal provision with a scienter requirement." 8 Kan. App. 2d at 656. Because Sleeth was neither present at nor consented to the act of her employee in serving the minor the prohibited beverage, the court reversed her criminal conviction and remanded for entry of a judgment of acquittal. 8 Kan. App. 2d at 658.

Four years later, *Sanctuary, Inc.*, addressed the statute again, in a civil context. The ABC fined Sanctuary, a private club, $500 for serving alcohol to a minor, thereby violating K.S.A. 41-2615; the version in effect at the time was identical to that analyzed in *Sleeth*. Sanctuary then attempted to recover the fine in a small claims action against the minor, but the district court granted summary judgment to the minor. Following the *Sleeth* rationale, the *Sanctuary, Inc.* court found that K.S.A. 41-2615 "imposes upon a private club an absolute duty not to permit the consumption of alcoholic liquor or cereal malt beverage by a minor on its premises." 12 Kan. App. 2d at 39. Thus, the court held "that the strict regulatory policy expressed in the first sentence of K.S.A. 41-2615 bars any fraud action by a private club against a minor to recover penalties imposed against the club for serving the minor in violation of K.S.A. 41-2615." 12 Kan. App. 2d at 39.

The decisions in *Sleeth* and *Sanctuary, Inc.* emphasized the fact that the first sentence of K.S.A. 41-2615 addressed only "clubs," not people, and was therefore regulatory, not penal, in nature. But the statute as it exists in the instant case no longer makes that distinction. The current statute applies to any licensee or permit holder, or any owner, officer, or employee thereof, and prohibits all such persons from "knowingly or unknowingly" permitting the possession or consumption of alcohol by a minor on the premises. The amended version of the statute was addressed by the Kansas Supreme Court in *State v. JC Sports Bar, Inc.*, 253 Kan. 815, 861 P.2d 1334 (1993). In that case, while conducting random bar checks and looking through the front window of the JC Sports Bar, a member of the Geary County Sheriff's Office saw a person he knew to be a minor pick up a cup of beer and drink from it. The

evidence was uncontroverted that no employee of JC Sports Bar sold or gave the minor the beer or knew he had taken a drink; an acquaintance who had left the bar earlier had left the beer on the table. JC Sports Bar, Inc., the owner of JC Sports Bar and the holder of a cereal malt beverage license for the premises, and Jong S. Song, the owner of the corporation, were charged with " 'knowingly or unknowingly' permitting the consumption of a cereal malt beverage by . . . a minor." 253 Kan. at 816.

The district court found there was no evidence that the owner or any employee of the bar knowingly or unknowingly committed any act that permitted the minor to consume the beer and " 'because there was no illegal act committed [by the owner or employee], there is no act which constitutes any conduct which falls within the statutory language of "knowingly or unknowingly permit." ' " 253 Kan. at 818. Thus, the district court determined that JC Sports Bar, Inc., and Song had not criminally violated the law.

The State appealed on a question reserved, and our Supreme Court examined "whether the language 'knowingly or unknowingly permit' as set forth in K.S.A. 1992 Supp. 41-2615(a) imposes an absolute duty to prohibit the consumption of alcoholic liquor or cereal malt beverages by minors on a licensee's premises." 253 Kan. at 818. As the ABC does here, the State argued in *JC Sports Bar, Inc.* that the plain language of the statute imposed an absolute duty. Also similarly, both parties in *JC Sports Bar, Inc.* relied upon *Sleeth* to support their positions. Our Supreme Court noted that the statute had been amended since *Sleeth* but stated that *Sleeth* and *Sanctuary, Inc.* were relevant because the phrase "knowingly or unknowingly permit" had survived the amendment process. 253 Kan. at 820-21.

The *JC Sports Bar, Inc.* court went on to state that no legislative history shed light on why the language "knowingly or unknowingly permit" was used in the statute or on its intended impact. 253 Kan. at 821. But because the statute was being enforced in a criminal proceeding, the court concluded that it was required to strictly construe the statute and decide any reasonable doubt about the interpretation in favor of the accused. 253 Kan. at 821. The court stated that although the *Sleeth* and *Sanctuary, Inc.* courts found

that the phrase "knowingly or unknowingly permit" created absolute liability, "those cases involved civil liability and were decided under a more liberal standard than must be applied to the present statute." 253 Kan. at 823. Despite acknowledging the fact that the legislature has the authority to enact criminal statutes that create absolute liability offenses, the court held that the legislature here, by using the language "knowingly or unknowingly permit," meant to require some action or inaction of a greater magnitude than merely opening for business on the night in question before criminal liability would attach. 253 Kan. at 821-23. The court concluded that "K.S.A. 1992 Supp. 41-2615(a) does not establish absolute liability *under the facts of this case* and does not clearly indicate a legislative purpose to do so." (Emphasis added.) 253 Kan. at 823.

Reed's argues that based on *J.C. Sports Bar, Inc.*, there must be evidence of some action or inaction whereby the licensee *permitted* a minor to possess or consume alcohol on the premises in order for the licensee to be liable for violating K.S.A. 41-2615. In other words, Reed's argues that in order for it to liable for violating the statute, there must have been evidence supporting a finding by the Director that a Reed's employee actually served beer to Shupe or observed him drinking beer on the premises and did nothing to prevent it. Reed's argues that the agency and the district court erred in finding that K.S.A. 41-2615 imposed strict liability on Reed's based only on a finding that Shupe possessed and consumed alcohol on the premises.

Reed's arguments would be more persuasive if this case was a criminal prosecution. But the ABC contends that the Department can impose either civil or criminal sanctions for a violation of K.S.A. 41-2615 and that in the context of a civil regulatory proceeding, the statute imposes strict liability on a licensee whenever a minor possesses or consumes alcohol on its premises. The ABC argues that in order for the Department to impose a civil fine on Reed's for violating K.S.A. 41-2615, it is enough that the evidence established that Shupe possessed or consumed beer on the premises, and it was unnecessary to establish that Reed's employees permitted the act by actually serving the beer to Shupe or by observing him drink beer on the premises.

The Supreme Court's holding in *JC Sports Bar, Inc.*, turned upon the fact that the case involved a criminal prosecution against the owner of the tavern and there was no evidence that the tavern owner or any of its employees served alcohol to the minor or had any knowledge that the minor consumed alcohol on the premises. The Supreme Court in *JC Sports Bar, Inc.*, acknowledged that the *Sleeth* and *Sanctuary, Inc.* courts found that the phrase "knowingly or unknowingly permit" in K.S.A. 41-2615 created absolute liability, but the court stated that "those cases involved civil liability and were decided under a more liberal standard than must be applied to the present statute." 253 Kan. at 823. The Supreme Court concluded that because K.S.A. 41-2615(a) did not clearly establish absolute liability under the facts of the case, any doubt must be resolved in favor of the accused in the criminal prosecution. 253 Kan. at 823. As ABC argues, had *JC Sports Bar, Inc.*, been a civil case, like we have here, the Supreme Court likely would have concluded that the phrase "knowingly or unknowingly permit" creates absolute liability for a violation of the statute, as the *Sleeth* and *Sanctuary, Inc.* courts concluded.

The key language of K.S.A. 2012 Supp. 41-2615(a) provides that no licensee shall "knowingly or unknowingly permit" the possession or consumption of alcohol by a minor on its premises. In interpreting a statute, an appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 918, 296 P.3d 1106 (2013). The term "permit" is defined to mean "to consent to" or "to give opportunity for." Black's Law Dictionary 1255 (9th ed. 2009). See also *State v. Wilson*, 267 Kan. 550, 560, 987 P.2d 1060 (1999) (to permit commonly means to give consent, to authorize, to make possible, or to give an opportunity).

Under the plain language of the statute, Reed's "unknowingly permitted" Shupe to consume alcohol on the premises merely by allowing him to enter the premises and by serving alcohol in an area within Shupe's reach. Although a scienter requirement may be imposed by courts in a criminal prosecution where the defendant's liberty is at stake, we agree with the ABC that the plain lan-

guage of K.S.A. 2012 Supp. 41-2615(a) prohibits a licensee from knowingly or unknowingly permitting the possession or consumption of alcohol by a minor on its premises. Applying the statute to the facts of this case, in order to find Reed's liable for violating the statute, it is enough that the evidence established that Shupe possessed or consumed beer on Reed's premises, and it was unnecessary to establish that Reed's employees permitted the act by actually serving the beer to Shupe or by observing him drink beer on the premises. Reed's would have had a defense to the prosecution had the evidence established that Shupe exhibited identification purporting to establish that he was 21 years of age. See K.S.A. 2012 Supp. 41-2615(c). But Shupe and Bourdon both testified that no employee of Reed's ever asked to see identification when they purchased and consumed the beer at Reed's.

Moreover, we note with significance that after hearing the evidence presented at the administrative hearing, the Director made a specific factual finding that "Reed's employees delivered pitchers and cups to the table where Shupe was obviously in possession of and consuming the beer." Thus, the record is clear that the Director found that Reed's employees did, in fact, commit an act that *permitted* Shupe to possess and consume beer on the premises, although the Director ultimately did not rely on this finding in concluding that Reed's was civilly liable for violating the statute. Based on the evidence presented at the administrative hearing, we conclude that the agency and the district court did not err in finding that Reed's was responsible for ensuring that minors do not possess or consume alcoholic beverages on its premises and that K.S.A. 2012 Supp. 41-2615 imposed strict civil liability on Reed's when Shupe consumed alcohol on the premises.

### SUFFICIENCY OF THE EVIDENCE

Finally, as a separate issue, Reed's argues that even if K.S.A. 41-2615 imposes strict liability on a licensee, there was insufficient evidence to support a finding that Shupe possessed or consumed alcohol at Reed's on the night in question. Reed's contends that because Shupe and Bourdon told inconsistent stories, their testimony was not credible. Moreover, Reed's argues that the evidence

was not substantial because it was not based on observations made by law enforcement officers or corroborated by independent evidence outside Shupe's and Bourdon's statements.

K.S.A. 2012 Supp. 77-621(c)(7) provides that a court shall grant relief from an agency action if it determines that

"the agency action is based on a determination of fact, made or implied by the agency, that is not supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act."

Substantial evidence is evidence that a reasonable person could accept as being sufficient to support the conclusion reached. *In re Protests of Oakhill Land Co.*, 46 Kan. App. 2d 1105, 1114, 269 P.3d 876 (2012). Reed's bears the burden of proving that the determination of fact is not properly supported to the appropriate standard of proof. See K.S.A. 2012 Supp. 77-621(a)(1).

K.S.A. 2012 Supp. 77-621(d) goes on to explain:

"For purposes of this section, 'in light of the record as a whole' means that the adequacy of the evidence in the record before the court to support a particular finding of fact shall be judged in light of all the relevant evidence in the record cited by any party that detracts from such finding as well as all of the relevant evidence in the record, compiled pursuant to K.S.A. 77-620, and amendments thereto, cited by any party that supports such finding, including any determinations of veracity by the presiding officer who personally observed the demeanor of the witness and the agency's explanation of why the relevant evidence in the record supports its material findings of fact. In reviewing the evidence in light of the record as a whole, the court shall not reweigh the evidence or engage in de novo review."

As Reed's points out, under this direction, this court must consider "whether the evidence supporting the agency's decision has been so undermined by cross-examination or other evidence that it is insufficient to support the agency's conclusion." *Herrera-Gallegos v. H&H Delivery Service, Inc.*, 42 Kan. App. 2d 360, 363, 212 P.3d 239 (2009).

Specifically, Reed's challenges the Director's finding that "Shupe did possess and consume alcoholic liquor on the licensed premises"; Reed's states that each piece of evidence presented at the hearing that supported this finding was contradicted on at least

one occasion and was undermined by Reed's denial that Shupe possessed or consumed alcohol on its premises. At the hearing, Chapman testified that Bourdon first denied that Shupe was at Reed's but later admitted that Shupe was there and had been drinking beer. According to Chapman, Bourdon maintained that he had purchased the beer, not Shupe.

Chapman also testified that he spoke with a Reed's employee who said he remembered a young man at Reed's on the night in question who was with a man fitting Bourdon's description; the employee told Chapman that the younger man did not drink and stayed at an outside table the entire night. Chapman further testified that Shupe told him that Shupe drank some beer Bourdon purchased and later purchased a pitcher himself. In his initial written statement to police, Shupe stated that he drank beer at Reed's but did not mention buying any beer; Shupe's second written statement, however, stated that he bought a pitcher of beer from a waitress while sitting outside at a table.

Bourdon testified at the hearing that he saw Shupe drink multiple beers at Reed's on the night in question. Bourdon believed that Shupe purchased beer that night, although he did not see Shupe do so, because he saw Shupe come back from the bar with a pitcher of beer. Bourdon testified that his statement to Chapman that Shupe did not buy any alcoholic drinks at Reed's was said in sarcasm and that he later told Chapman that it was sarcastic statement. Counsel for Reed's pointed out that Chapman did not testify that Bourdon told him the original statement was not meant to be taken as truth.

When Shupe testified at the hearing, he stated that when he first got to Reed's on the night in question, he "went straight up to the bar [and] got a pitcher of beer." He further testified that throughout the evening, he purchased two pitchers of beer and consumed some of the beer that members of his party bought. On cross-examination, Shupe admitted that his first written statement said nothing about his buying beer; instead the statement said that he drank from pitchers of beer at the table when he got there and that his second written statement said that he bought one pitcher of beer at the end of the night. Shupe testified that there was

actually a third version of events: the version to which he testified at the hearing, in which he purchased two pitchers of beer. To explain the differences in his statements, Shupe stated that he was "pretty intoxicated" and terrified by being in trouble when he wrote the first statement and, when he wrote the second statement, he was only counting the one pitcher of beer he purchased completely with his own money; he and Bourdon split the cost of another pitcher of beer.

The Director found that the evidence established that Shupe consumed beer at Reed's. As the Director noted, the discrepancies between Shupe's statements concerned the amount of beer he consumed and whether he purchased beer, not the fact that he consumed. On appeal, the Secretary aptly noted that "the Director obviously believed the testimony of Mr. Shupe and/or Mr. Bourdon to the effect that Mr. Shupe possessed or consumed alcoholic liquor while on the licensed premises. Although a different trier of fact could potentially find otherwise, the Director's decision is based on substantial evidence." Accordingly, the Secretary upheld the factual finding that Shupe possessed and consumed alcoholic liquor while at Reed's. Similarly, the district court found that the Director clearly "made a credibility determination which this Court does not dispute upon examination of all the testimony" and concluded that the determination that Shupe possessed and consumed alcohol at Reed's "is supported to the appropriate standard of proof by evidence which is substantial when viewed in light of the record as a while."

Considered in light of the record as a whole, taking into account the inconsistent nature of their statements, Shupe's direct testimony that he drank beer at Reed's and Bourdon's similar testimony comprise substantial evidence that supports the Director's finding that Shupe consumed beer at Reed's. Despite Reed's urging, this court does not reweigh the evidence or make credibility determinations. See K.S.A. 2012 Supp. 77-621(d). As previously stated, the Director also found that Reed's employees permitted Shupe to consume the beer by delivering pitchers and cups to the table where Shupe was obviously in possession of and consuming the

beer. We conclude there was sufficient evidence to support the finding that Reed's violated K.S.A. 2012 Supp. 41-2615.

Affirmed.