No. 43,878

STATE OF KANSAS, *Appellee,* v. HERMAN B. GOERING, *Appellant.*

(392 P. 2d 930)

Opinion filed June 6, 1964.

*Michael T. Mills* and *Evart Mills,* both of McPherson, argued the cause, and were on the briefs for the appellant.

*Robert W. Wise,* County Attorney, McPherson, argued the cause, and *William M. Ferguson,* Attorney General, Topeka, was with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: The defendant was tried and convicted on two charges. First, willfully obstructing, resisting or opposing Dale Bishop, sheriff, Ivan Peden, undersheriff, and Vincel Kling, deputy sheriff, of McPherson County, Kansas, in their attempt to serve or execute a writ of execution issued by the clerk of the district court of McPherson County, and in the discharge of their official duty, in violation of G. S. 1949, 21-718, as charged in amended complaint No. 1, and second, wilfully assaulting deputy sheriff Kling by striking him on the head with a pipe wrench while said officer was engaged in the discharge of an official duty, to wit, placing the defendant under arrest, in violation of G. S. 1949, 21-719, as charged in amended complaint No. 2. Following the imposition of sentence, this appeal was taken by the defendant.

Although several errors are specified, the gist of the defendant's complaints may be stated to be that the officers were unlawfully

attempting to levy upon his exempt personal property thus giving him the legal right to resist them and, further, that the attempted arrest was likewise unlawful, thus justifying his use of force to defend himself.

The undisputed evidence shows that on May 22, 1963, the three officers had gone to the defendant's home farm, which was located some distance northwest of McPherson, to levy an execution upon his property. Before leaving on this mission, the sheriff had been advised by the attorney for the judgment creditor to make the levy on two tractors, two trucks and a car, and the sheriff had written such a notation on the execution.

Upon arriving at the farm the officers observed a 1958 Ford passenger car, a Chevrolet truck and a M & M tractor. However, they found no one at home and after a short wait proceeded to another Goering farm where they found a Case tractor with a duck foot attachment on the rear.

Shortly thereafter the defendant (sometimes herein called Goering) drove up in a pickup truck in which was a barrel of fuel for the tractor. The sheriff then handed the execution to Goering who threw it on the ground and advised the officers, in effect, that they were not going to take anything and that whatever they got would be over his dead body.

A conversation of some forty-five minutes ensued, Goering claiming he did not owe the debt and the officers explaining their duty to take the property under the execution. Goering was also advised that he should secure a lawyer and adjust his grievances in court to which Goering replied he was fifty years old and had never hired a lawyer and was not going to start now.

There is some discrepancy as to what the defendant told the officers at the conclusion of their colloquy. All three officers testified that he told them they could take the pickup, while two of the officers stated that he also said to take the Ford car as well. Goering himself testified that he told the officers they could have the truck and the car and the other tractor. It is not disputed, however, that thereafter Goering got on his tractor and proceeded into the field where he began plowing. The officers then discussed between themselves what they should do, and while there was at first some talk about taking the Case tractor as well, it was finally decided to get the pickup, and possibly the Ford car, and take the same into town.

On discovering that Goering had taken the keys from the pickup so that it could not be driven, the officers determined to go out to the field and ask for the keys and if they were refused then to place the defendant under arrest.

Acting on their decision, the officers proceeded to the field where Goering was working and, when Goering stopped his tractor, asked him about the keys to the pickup. Goering replied, in substance, that the officers were not getting anything and "to heck with you guys." At this point deputy sheriff Kling said, "Herman, you are under arrest," upon which Goering immediately started his tractor forward making Kling jump aside to avoid being run over. As the tractor passed him, Kling jumped on and tried to stop it.

The details of what occurred after Kling got on the tractor are somewhat in dispute but it is clear that Kling was attempting to stop the machine while Goering tried to prevent him from doing so. During the encounter, Goering reached for and obtained a fourteen inch pipe wrench which he swung at Kling striking him on the forehead and on the arm which Kling threw up to ward off the blow. A few seconds later, Kling managed to stop the tractor and the two other officers took Goering from the tractor and put him on the ground where Goering got hold of the undersheriff's revolver. Observing this, Kling, who by this time had left the tractor, ran up and either kicked or knocked the gun out of Goering's hand. Subsequently Goering was handcuffed and taken to jail.

Under the law of this state the use of direct force or physical violence is not required to constitute the offense of obstructing process in civil or misdemeanor cases, as such is denounced in G. S. 1949, 21-718. In the case of *State v. Merrifield*, 180 Kan. 267, 303 P. 2d 155, this court had occasion to consider the statute and held:

"Under the provisions of G. S. 1949, 21-718, if one under arrest goes into his house, closes and latches the door and refuses to go with the officer on request, without a further overt act, it is sufficient to support a conviction of obstructing, resisting or opposing the officer in the discharge of his official duty in a criminal case other than a felony." (Syl. 3.)

In the course of its opinion, the court said:

"The statute does not limit the offense to resistance alone. It includes also willful acts of obstruction or opposition, and to obstruct is to interpose obstacles or impediments, to hinder, impede or in any manner interrupt or prevent, and this term does not necessarily imply the employment of direct force, or the exercise of direct means. It includes any passive, indirect or circuitous impediments to the service or execution of process; such as hindering or preventing

an officer by not opening a door. It may be stated as a general rule that under statutes containing the words 'obstruct, resist, or oppose,' or the single word 'resist,' the offense of resisting an officer can be committed without the employment of actual violence or direct force." (pp. 270, 271.)

The *Merrifield* decision accords with the generally prevailing rule set out in 39 Am. Jur., Obstructing Justice, § 10, p. 507, where in discussing the meaning of "obstruct" it is said:

". . . It includes any passive, indirect, circuitous impediments to the service or execution of process, such as hindering or preventing an officer by not opening a door or removing an obstacle, or by concealing or removing property . . ."

We entertain no doubt that the defendant's conduct was designed to obstruct, resist and oppose the McPherson County officers in serving the execution and levying upon his property. When he took the keys to the pickup truck which, according to the officers he had said they could take with them and then, when asked about the keys, made belligerent comments and started his tractor forward so precipitously that Kling was forced to step aside to escape being run over, the defendant was obviously obstructing, resisting and opposing the officers as those terms are defined in *State v. Merrifield,* supra.

The foregoing conclusion, however does not dispose of the question as to whether the officers were acting so unlawfully as to place them in the category of trespassers, thus justifying the defendant's obstructive tactics. As previously stated, the defendant insists that the sheriff and his deputies were attempting unlawfully to levy on his exempt personal property, and his trial and post trial motions, his requested instructions and objections to instructions given, were predicated on that assumption. Likewise, his argument before this court is fashioned on such a premise.

To us, it seems unnecessary to dwell at length either on the purpose of our exemption statute, G. S. 1949, 60-3504, or upon the prior decisions of this court defining the property which is covered by its provisions. Nor do we feel required to discuss decisions either delineating a debtor's legal rights where a levy is attempted on his exempt property, or suggesting an officer's obligation when levying on property possessed by the head of a family. This is so because the record contains abundant evidence from which the jury reasonably could have inferred that the defendant waived any right of exemption he may have had in the pickup truck.

It is a well established principle of law that a statutory exemption may be waived by the debtor. The general rule is expressed in 22 Am. Jur., Exemptions, § 135, p. 103, in the following language:

"Whatever view the courts may take as to the right of a debtor to waive his exemptions by executory contract or agreement, they seem to be in accord upon the proposition that, in so far at least as a particular exemption is a purely personal right of the debtor, he may waive it at the time of the levy or thereafter. . . ."

This court, in two early cases, has recognized the principle. In *Rice v. Nolan*, 33 Kan. 28, 5 Pac. 437, in discussing a debtor's statutory right of exemption, the court said:

". . . It is true, he may waive the right. This court has held that a tenant in a written lease may waive the benefit of the exemption law upon a debt contracted for rent, (*Hoisington v. Huff*, 24 Kas. 379); and the debtor may also sell his personal property, which is exempt from execution, (*Arthur v. Wallace*, 8 Kas. 269); and he may pledge personal property as collateral security, notwithstanding it would be otherwise exempt, (*Jones v. Scott*, 10 Kas. 33). And doubtless if he should turn over exempt personal property to the officer, and permit him to sell the same in satisfaction of an attachment or execution, it would operate as a waiver. . . ." (p. 30.)

The question of waiver was also brought up in *Gardner v. King*, 37 Kan. 671, 15 Pac. 920, which was an action to recover possession of exempt property taken on execution and purchased by defendant after being notified that plaintiff claimed it exempt. In its opinion the court stated:

". . . If the plaintiff had waived his right to select the property, or had done anything else that would reasonably prevent him from claiming the property as exempt, it would have been a proper defense to his claim. . . ." (p. 673.)

Whatever the defendant may have told the officers about taking one of his trucks, and they testified he said to take the pickup, the circumstances under which the statement was made are important. Some thirty to forty-five minutes had been consumed in argument over what or how much, if any, of the defendant's property listed on the execution could be taken. It appears probable that none of the disputants knew exactly which property could properly be subjected to the levy, and indeed it is not possible even for us to conclude with certainty from the evidence of record whether both trucks and both tractors fall within the statutory classification of *necessary* tools or implements for the carrying on of Goering's business, even though Goering made the naked assertion at the trial that he used all of them. Hence any declaration made by Goering

that the officers could take the pickup, as they testified, would in our judgment constitute a designation by Goering of the specific property upon which execution could be levied and would indicate consent thereto.

It is not entirely clear from the record of the defendant's evidence just which truck he claims to have told the officers they might take. The following excerpt is taken from the summary of his testimony, "I told him they could have the truck and the car and the other tractor." Assuming this refers to the Chevrolet truck rather than to the pickup truck, the resulting conflict would not impugn the jury's verdict. This court has consistently held that it is the function of the jury to weigh the evidence and that its verdict will not be disturbed if supported by substantial, competent evidence. (See 2 Hatcher's Kansas Digest, rev. ed., Criminal Law, § 438, pp. 276, 277; 4 West's Kansas Digest, Criminal Law, § 1159 (2), (3), pp. 576, 578.)

The jury had the right to conclude from the evidence before it that the defendant had waived whatever right he had to claim the pickup as exempt, and that his subsequent obstructive tactics were not, in fact, justified. The verdict of guilty on the first charge finds sufficient support in the testimony of the officers.

The defendant urges that he was justified in making the assault upon Kling, as alleged in complaint No. 2, for the reason that Kling was making an illegal arrest. This contention cannot be sustained for two reasons.

First, the jury found, and we think correctly, that the defendant was guilty of having obstructed and resisted Kling and his fellow officers in discharging their duties. Obviously this offense was committed in the presence of Kling and the other officers. In this state the law is well settled that a peace officer may make an arrest without a warrant for a misdemeanor committed in his presence. (*State v. Appleton*, 70 Kan. 217, 218, 220, 78 Pac. 445; *State v. Merrifield*, supra.) In view of the jury's finding of guilty as to the first charge, it may not now be said that deputy sheriff Kling was making an unlawful arrest at the time of the defendant's assault upon him.

Second, even if it were true that Kling was unlawfully attempting to take the defendant into custody, the jury still had to consider whether Goering used excessive force in resisting the arrest. If an attempted arrest is unlawful, the person sought to be arrested may not use more force than is reasonably necessary to effect his escape. (6 Am. Jur. 2d, Assault and Battery, § 79, p. 72.)

The court correctly, and without objection, instructed the jury as to the defendant's right of self defense against an unlawful arrest as follows:

"You are instructed that every person has a right to resist an unlawful arrest and a person may use such reasonable force as is necessary to prevent the arrest. An illegal arrest is an assault and battery and generally a person has the same right to use force in defending himself from an unlawful arrest as he would have in repelling any other assault and battery. Rightful resistance is limited to the same degree of force as is employed in making the arrest. And the force used must be proportionate to the threatened injury."

It must be presumed that the jury followed this, as well as the other, instructions. In so doing they may well have concluded that in using a fourteen inch pipe wrench against the unarmed Kling, the defendant used a degree of force disproportionate to the end sought to be attained. We find the verdict on the second charge supported by the evidence.

We have considered the instructions given by the trial court, including those to which objection was made, and believe they fairly stated the law and were without substantial prejudice to the defendant. Attention has also been given to the defendant's requested instructions. Under the circumstances of this case, as shown in the record, they were properly refused.

No prejudicial error having been made to appear, the judgment of the trial court is affirmed.