NOT DESIGNATED FOR PUBLICATION

No. 128,176

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

CHARLES T. MURROW,
*Appellee.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; KEVIN M. SMITH, judge. Submitted without oral argument. Opinion filed June 26, 2026. Reversed and remanded with directions.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellant.

*Christopher S. O'Hara*, of O'Hara & O'Hara LLC, of Wichita, for appellee.

Before GARDNER, P.J., MALONE and ATCHESON, JJ.

GARDNER, J.: The State of Kansas appeals from the Sedgwick County District Court's dismissal of an aggravated battery charge it brought against Charles T. Murrow. Before trial, Murrow moved to dismiss, claiming that he was immune from criminal prosecution under K.S.A. 21-5231 because he acted in self-defense. After careful review, we reverse the district court's dismissal and remand for further proceedings, finding self-defense immunity not applicable.

1

On the evening of May 28, 2023, Adam Walters went to a concert in Wichita with a friend. After the concert ended at around 10 p.m., they went to a bar. After about an hour, Walters walked to a club with a man he had met at the bar. The evening bled into the early morning hours of May 29. The last memory Walters had of that night was doing shots at the club. The next thing he remembers was waking up in the hospital with a broken jaw and a brain bleed.

During law enforcement's investigation of the events that led to Walters' injuries, Detective Robert Thatcher with the Wichita Police Department obtained city surveillance video. That video captured the encounter between Walters and Murrow, who did not know each other at the time of their altercation. The video shows a group of four men and four women interacting in a large alley near a hotel parking garage in the Old Town district of Wichita.

At the beginning of the video, two groups of people are talking near each other. In one group, Murrow and Walters are socializing with three others while another group of three is talking nearby. Walters and Murrow can be seen shaking hands and tapping each other's backs. Two of the women that were with Walters and Murrow step away into their own group, and it appears that one of the women is waving goodbye while stepping away. Walters and Murrow talk and shake hands again.

Murrow then walks a short distance away from Walters to join the two women who had stepped away. Murrow points his thumb over his shoulder and backs up, seemingly gesturing to the women that he is leaving or that it is time to go. Murrow, the two women, and the other person talking with Walters start to walk away, leaving Walters alone. Murrow then turns his back and starts walking down the alley, and some

members of the group also follow before returning to where they originally were standing.

At this point in the video, Murrow and a woman are in one group down the alley and Walters is in another group with three women and one other man. Murrow and others can be seen making gestures suggesting they are ready to leave.

Murrow walks back near where Walters and others are standing. Walters is facing two women whose backs are on a wall of the alley. Murrow steps between Walters and the women and again gestures with his thumb over his shoulder while talking to them. He taps one of the women, seemingly to get her attention.

Murrow then turns his attention to Walters, and the two men speak before Walters takes his right hand out of his pocket and offers to shake Murrow's hand. It appears Murrow declines to shake Walters' hand and takes a step back, and the two exchange words. When the two women who were leaning on the alley wall start to join the rest of the group down the alley, Murrow turns and takes two steps to follow them.

Walters, who has both of his hands in his pockets, walks in the same direction as Murrow, who then stops. The two men appear to speak to each other again for approximately two seconds. Then Walters, who still had his hands in the pockets of his shorts, leans into Murrow, whose shoulder was towards Walters, and contacts Murrow's shoulder with his chest while saying "fuck you" in Murrow's ear. The video shows Murrow winding up and delivering a roundhouse blow flush to Walters' face as Walters stood with his hands down.

Walters suffered multiple broken bones and a brain bleed from Murrow's punch and was hospitalized for several days. During the investigation, Walters told the detective that he had no memory of the incident.

3

Detective Thatcher spoke with Murrow soon after the incident on a recorded phone call, which was admitted into evidence. In that call, Murrow said that he and Walters "had words" and were both "talking to each other reckless" and that the incident was "definitely provoked by both of us." Murrow told the detective he "felt so bad" after punching Walters. Thatcher told Murrow he would like to speak more with Murrow about the incident, but Murrow replied, "that's all there is to it." During the call, Murrow said nothing about self-defense or feeling threatened by Walters or being afraid of Walters before he punched him.

The State charged Murrow with one count of aggravated battery, a severity level 4 person felony in violation of K.S.A. 21-5413(b)(1)(A). Murrow waived his preliminary hearing and arraignment and moved to dismiss the case based on self-defense immunity. In that motion, Murrow asserted that Walters initiated physical contact as the two men were talking to each other, and that Murrow's acts were in self-defense.

The district court held an evidentiary hearing on the motion to dismiss. At that hearing, Walters testified that he did not know Murrow and confirmed that he had no memory of the incident. Murrow testified that he did not know Walters. When asked to describe the interaction between the two, Murrow testified, "We basically got into an argument, and that's about it." His attorney asked Murrow for more detail, and he responded, "Well, before we [were] arguing, he bumped me and was, like, fuck you. And that's basically what happened." Murrow explained that he felt threatened by the bump, adding "I didn't know him, so I just defended myself."

On cross-examination, Murrow testified that before the encounter turned physical, he had "politely" asked Walters "to leave us alone" because one of the women in Murrow's group felt threatened by Walters' presence since they did not know him. Murrow added, "I can't recall the actual details of the conversation, but we [were] arguing

4

about him leaving. I was politely asking him to leave," telling him "[w]e're going to go this way, you can go that way."

Murrow testified that after he asked Walters to leave, Walters said no. Murrow said that he and Walters exchanged additional words, but he could not recall exactly what was said. He denied "talking recklessly" to Walters and denied playing any part in provoking the situation. Murrow testified that Walters did not appear to be intoxicated and that he did not notice that Walters' hands were in his shorts pockets when he bumped Murrow and Murrow punched him.

Murrow maintained that he had punched Walters because he felt threatened by the bump and Walters simultaneously saying, "fuck you" in his ear when Murrow was trying to leave. But Murrow agreed that Walters made no other threats. When Murrow was asked what he was defending himself from, he responded, "I don't know. I was in an argument. I was defending myself from—I don't know what he was going to do to me. I felt like he might hit me."

After hearing the evidence and arguments, the district court judge issued an oral ruling, stating that if the case were to proceed to trial, "the jury would have a really hard time with this case." The district court then made factual findings and found that Murrow's testimony was not inconsistent with his comments to the detective during the phone call. The district court thus found that nothing Murrow said during his phone call with the detective impeached his credibility. The State asserts that the evidence does not support the district court's factual finding that Murrow's statements to the detective were consistent with his trial testimony.

The district court judge discussed the video and found that Walters leaned into Murrow and stayed in his personal space after bumping into him, so the judge found Walters was "not taking a passive" position as if he had accidentally bumped into

5

Murrow. To the contrary, the district court judge found that Walters was still leaning in toward Murrow after the bump in a "potentially aggressive stance." The State asserts that the evidence does not support this factual finding.

After these factual findings, the district court concluded that Murrow's punching Walters once was "in response to what he believed—had reason to believe that there was more coming" which "is not unreasonable force." Concluding that Murrow engaged in a legitimate use of self-defense, the district court granted his motion to dismiss the case. It found that Walters initiated the physical contact, that Murrow just punched Walters one time, and that Murrow had "reason to believe that there was more coming," so Murrow's use of force was reasonable. The court found this was a legitimate use of self-defense, and that the State failed to prove probable cause that it was not justified.

The district court's written order deemed the surveillance video the most reliable evidence of the altercation. It found:

> "[Murrow] admitted both he and [Walters] were arguing, but nothing in the video or witness testimony indicates such argument arose to fighting words prior to [Walters]'s aggressive actions. [Walters] initiated the physical confrontation with a chest bump into [Murrow] and said 'fuck you.' Video appears to show [Walters] leaning toward [Murrow] in an aggressive stance after the chest bump. [Murrow] responded to the chest bump and 'fuck you' comment with a single punch, which was sufficient to stop [Walters]'s assault."

The district court again found that "[w]hile [Murrow's] testimony might seem contradictory to his audio interview with [Thatcher], this court finds that it is not. He admitted both parties were reckless in their words, but nothing contradicts what this court's eyes saw on the video or heard in courtroom testimony."

The district court then found that Murrow's use of force was both subjectively and objectively reasonable, and that the State failed to show probable cause that Murrow's use

6

of force was not justified self-defense under K.S.A. 21-5222. It thus found Murrow immune from prosecution.

The State timely appeals under K.S.A. 22-3602(b)(1).

DID THE DISTRICT COURT ERR BY GRANTING MURROW'S MOTION TO DISMISS BASED ON SELF-DEFENSE IMMUNITY?

The State argues that the district court erred by dismissing the case based on self-defense immunity because the district court's factual findings are not supported by substantial competent evidence and because the district court misapplied the probable cause burden that governs self-defense immunity claims.

*Standard of Review and Applicable Legal Principles*

Under Kansas law, a person who uses statutorily justified force in self-defense "is immune from criminal prosecution . . . for the use of such force." K.S.A. 21-5231(a). "A person is justified in the use of force against another when and to the extent it appears to such person and such person reasonably believes that such use of force is necessary to defend such person . . . against such other's imminent use of unlawful force." K.S.A. 21-5222(a).

The use of force under K.S.A. 21-5222 thus involves both a subjective and an objective component. The person using force must subjectively believe the use of force was necessary for self-defense, and it must objectively appear to a reasonable person in like circumstances that the force used was necessary. *State v. Collins*, 311 Kan. 418, 427-28, 461 P.3d 828 (2020).

7

When a defendant asserts immunity under K.S.A. 21-5231(a), a district court must perform a "gatekeeping function" by imposing the burden on the State to establish "probable cause that the defendant's use of force was not statutorily justified." *State v. Phillips*, 312 Kan. 643, 655-56, 479 P.3d 176 (2021); see K.S.A. 21-5231(c). The district court's analysis is a two-step process. First, the district court must consider "'the totality of the circumstances'" and weigh the evidence "'without deference to the State'" to make findings of fact and resolve evidentiary conflicts. 312 Kan. at 656. Second, the district court must make a legal conclusion whether the State satisfied its burden to show "'probable cause that the defendant's use of force was not statutorily justified.'" 312 Kan. at 656 (quoting *State v. Hardy*, 305 Kan. 1001, 1011, 390 P.3d 30 [2017]).

When reviewing a challenge to a self-defense immunity ruling, this court uses a bifurcated standard of review. We review the district court's factual findings for substantial competent evidence, and we review the district court's legal conclusions de novo. *Phillips*, 312 Kan. at 656; *Hardy*, 305 Kan. at 1012.

In this case, we assume, without deciding, that substantial competent evidence supports the district court's factual findings that the State challenges. Thus, nothing impeached Murrow's testimony at the hearing that he played no role in provoking the situation and that he did not speak recklessly to Walters; and Walters continued to lean toward Murrow after contacting Murrow with his chest while stating "fuck you" in Murrow's ear. "'It is not the function of the appellate court to weigh the evidence or pass on the credibility of the witnesses.'" *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 407, 266 P.3d 516 (2011). We thus do not reweigh the facts but apply the legal determination based on the facts as found by the district court.

*The district court's legal conclusions misapplied the proper standard.*

We focus on the legal question whether the State established probable cause that the use of force was not justified. When assessing a claim of self-defense immunity, under the second step of its analysis, the district court must make a legal conclusion whether the State met its burden to show "'probable cause that the defendant's use of force was not statutorily justified.'" *Phillips*, 312 Kan. at 656. In this setting "probable cause means that the facts as found by the district court are sufficient for a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of defendant's guilt despite the claim of justified use-of-force immunity." *Collins*, 311 Kan. at 426.

The State can defeat a self-defense immunity motion in two ways:

> "(1) the defendant did not honestly believe the use of force was necessary under the
> circumstances, or (2) a reasonable person would not believe the use of force was
> necessary under the circumstances. In other words, if the State shows at least one of these
> circumstances, the dispute over K.S.A. 2019 Supp. 21-5222's application may become a
> question for a trial." 311 Kan. at 428.

"[I]t must be apparent from the record that the district court not only *recognized*, but also *applied*, the appropriate legal standard in reaching its probable cause determination." *Phillips*, 312 Kan. at 658. The district court's written order held that Murrow's acts were objectively and subjectively reasonable:

> "[Walters] made the first move by battering [Murrow] with a chest bump. [Murrow]
> believed one punch was necessary to defend himself from additional assaults, and the facts
> objectively show the punch was a reasonable act of self-defense.
>      . . . .

9

"[Murrow] admitted both he and [Walters] were arguing, but nothing in the video or witness testimony indicates such argument arose to fighting words prior to [Walters]'s aggressive actions. [Walters] initiated the physical confrontation with a chest bump into [Murrow] and said 'fuck you.' Video appears to show [Walters] leaning toward [Murrow] in an aggressive stance after the chest bump. [Murrow] responded to the chest bump and 'fuck you' comment with a single punch, which was sufficient to stop [Walters]'s assault.

. . . .

"Above evidence compels this court to find that the totality of circumstances reveals [Murrow]'s actions to be objectively reasonable.

"Additionally, [Murrow] testified that he believed [Walters] was assaulting him. He said that he believed his punch was necessary to stop the assault, which it did. The evidence presented does not contradict this subjective belief. The single punch was therefore subjectively reasonable.

"For the above reasons, the [S]tate failed to show probable cause, or reasonable belief, that [Murrow]'s use of force was not justified self-defense under K.S.A. 21-5222. He is therefore immune from prosecution under K.S.A. 21-5231."

The district court characterized Walters' acts toward Murrow as an assault and battery. Although that term may typically suggest more than happened here, we use the district court's characterization for purposes of simplicity and we assume, without finding, that Walters' initial physical contact with Murrow could be characterized as an unlawful act.

The State contends that the facts as found by the district court are sufficient for a person of ordinary prudence and caution to conscientiously entertain a reasonable belief in Murrow's guilt. In support of this argument, the State relies on *Collins*, 311 Kan. at 423. There, as here, the district court dismissed all charges upon determining that the defendant was immune from prosecution. Yet the Kansas Supreme Court reversed that dismissal because the district court "lost sight of its task at this pretrial stage," which was to determine whether the State had established probable cause that his use of deadly force in self-defense was not justified, which is "substantially less than the proof beyond a reasonable doubt necessary to obtain a guilty verdict." 311 Kan. at 426, 434.

10

*The subjective prong is not met.*

We review the district court's legal conclusions de novo. *Phillips*, 312 Kan. at 656; *Hardy*, 305 Kan. at 1012. As for the subjective prong required by K.S.A. 21-5222(a), the district court found that Murrow testified "that he believed his punch was necessary to stop the assault." But Murrow never testified that he felt his punch was necessary to defend himself from Walters' imminent use of unlawful force. Murrow testified that he punched Walters because he felt threatened by Walters' bump while stating "fuck you" in his ear. But when asked what he was defending himself from, Murrow replied, "I don't know what he was going to do to me. I felt like he *might* hit me." (Emphasis added.) No evidence shows that Murrow actually believed that he was in imminent danger of bodily harm from Walters, as K.S.A. 21-5222(a) requires. Nor does the evidence show that Murrow honestly believed that the extent of force he used was necessary under the circumstances to repel that threat, as self-defense immunity requires. See K.S.A. 21-5222(a).

*The objective prong is not met.*

But even if the subjective prong of K.S.A. 21-5222(a) were met, the State shows probable cause that Murrow's punch to Walters was not objectively reasonable. Implicit in the objective reasonableness prong is the requirement that the degree of force used was warranted under the circumstances and was proportionate to the threatened injury. "[I]n repelling an attack one is limited to 'that force which reasonably appears to be necessary for that purpose.'" *State v. Gregory*, 218 Kan. 180, 185, 542 P.2d 1051 (1975). And "'the force used must be proportionate to the threatened injury.'" *State v. Goering*, 193 Kan. 307, 313, 392 P.2d 930 (1964).

11

*Goering* makes this point in the context of examining the right of self-defense during an alleged unlawful arrest. The court correctly instructed the jury as to the defendant's right of self defense against an unlawful arrest as follows:

> "'You are instructed that every person has a right to resist an unlawful arrest and a person may use such reasonable force as is necessary to prevent the arrest. An illegal arrest is an assault and battery and generally a person has the same right to use force in defending himself from an unlawful arrest as he would have in repelling any other assault and battery. *Rightful resistance is limited to the same degree of force as is employed in making the arrest. And the force used must be proportionate to the threatened injury*.'" (Emphasis added.) 193 Kan. at 313.

The Supreme Court affirmed the jury's verdict finding the defendant guilty of assaulting a law enforcement officer because the jury "may well have concluded that in using a fourteen inch pipe wrench against the unarmed [officer], the defendant used a degree of force disproportionate to the end sought to be attained"—escaping an alleged unlawful arrest. *Goering*, 193 Kan. at 313.

Murrow's right to use force in defending himself from an assault or battery is limited to force proportionate to the threatened injury. When the amount of force used to defend oneself is excessive, a self-defense claim fails. See *State v. Green*, No. 76,499, 1998 WL 36035933, at *2 (Kan. App. 1998) (unpublished opinion) (A panel of this court found that the jury had a sufficient basis to find that the amount of force Green used to defend a third person [striking the victim in the head with a metal flashlight with such force that it fractured his skull and damaged his brain] was excessive given the disproportionate sizes of the two men—Green was 6 feet 4 inches tall and weighed 225 pounds yet the victim weighed 130 pounds and was 5 feet 3 inches tall.). Yet in arriving at its legal conclusion regarding the objective prong of the probable cause determination, the district court failed to determine whether the amount of force Murrow used was proportionate to the threat posed by Walters.

The objective part of the test in K.S.A. 21-5222 requires consideration of the totality of the circumstances to determine whether a reasonable person would believe that danger was imminent. See *Hardy*, 305 Kan. at 1011. We first examine the threat posed by Walters. Walters bumped Murrow's shoulder after the two had exchanged words but before any other physical contact, disagreeing whether Walters was welcome to be with Murrow and his friends. Walters bumped Murrow's shoulder when Murrow was looking elsewhere, yet that contact was not hard enough to cause Murrow to lose his balance or to noticeably move in response. Walters' contact appears to have been made to get Murrow's attention and, because the contact was so slight, cannot reasonably have been intended to injure Murrow.

Walters made contact with Murrow while saying "fuck you." Yet the district court did not give much significance to that fact. It did not find that those words "by their very utterance inflict injury or tend to incite the listener to an immediate breach of the peace." See K.S.A. 21-6203(c). And that phrase is so often bandied about as to significantly blunt the shocking or offending effect it once may have had. See Fairman, *Fuck*, 28 Cardozo L. Rev. 1711, 1720 (February 2007) (describing the pervasiveness of the word: "One recent Internet search revealed that fuck 'is a more commonly used word than mom, baseball, hot dogs, apple pie, and Chevrolet.'"). And the district court did not give the phrase much weight in its analysis.

We next examine Murrow's response. Murrow responded to Walters' assault and battery by forcefully striking Walters' head with his fist when Walters' hands were in his pockets, thus he could not ward off Murrow's unexpected blow to his head. Had Murrow taken even one second to assess the situation before he punched Walters, he would have seen that Walters had his hands in his pockets and that Walters was thus not on the verge of hitting or otherwise injuring Murrow. Even though Walters was leaning toward Murrow at the time, nothing about Walters' body language would suggest to a reasonable

13

person that Walters was about to strike Murrow with his fists or an object, or to take other action to inflict severe bodily harm on Walters.

Lastly, we next compare the force Murrow used to the threat of injury by Walters. Our statute, as applied here, states that Murrow is justified in using force against Walters when and *to the extent* it appears to Murrow and Murrow reasonably believes that such use of force is necessary to defend Murrow against Walters' imminent use of unlawful force. See K.S.A. 21-5222(a). Read together, K.S.A. 21-5221(a)(1) (defining use of force) and K.S.A. 21-5222(b) (defining when a person is justified in deadly force under [a]) reflect that "nondeadly force may be used to defend oneself from another's *imminent* use of *unlawful* force." *State v. Ramirez*, No. 126,246, 2024 WL 1827221, at *4 (Kan. App. 2024) (unpublished opinion).

The facts as found by the district court fail to show that Murrow reasonably believed the amount of force he used was *necessary* to defend himself from Walters' *imminent* use of unlawful force against him. The facts fail to show that Murrow reasonably believed that Walters was likely to soon use any force, let alone unlawful force, against him. Thus no evidence shows that a reasonable person would have interpreted Walters' actions as being an aggressor to the point of becoming an imminent threat of bodily harm to Murrow. Cf. *State v. Montgomery*, 322 Kan. 152, 163, 587 P.3d 738 (2026) (holding court did not err by declining to give a self-defense instruction under K.S.A. 21-5222 because no evidence showed a reasonable person would have perceived the use of deadly force as necessary).

"K.S.A. 21-5222(a) does not allow the use of force as *retaliation* for force already used by an attacker. Rather, the statute permits a person to prevent an imminent attack, fight off an ongoing attack, or ward off further attack where such further attack is imminent." *Ramirez*, 2024 WL 1827221, at *5. Calling Walters "an attacker" here is a misnomer. But the focus is not on what Walters did before Murrow punched him; it is on

14

what Walters was reasonably likely to do—or continue doing—if Murrow did not defend himself. The district court's focus on the fact that Walters touched Murrow first, was thus misplaced.

The district court's conclusion that Murrow's "one punch" in response to Walters' acts was a reasonable use of force is legally unfounded. The amount of force that Murrow used in response to Walters' assault and battery was excessive—he struck Walters in the jaw so hard that Walters suffered broken bones in his face, had a brain bleed, and was hospitalized for several days. In contrast, the threat that Murrow perceived from Walters' bump was minimal—merely that Murrow did not know what Walters was going to do to him and felt like Walters *might* hit him. Murrow's "one punch" inflicted severe harm on Walters, exceeding the degree of force which was conceivably necessary to "repel" the minimal or non-existent threat of imminent bodily injury by Walters. See *Gregory*, 218 Kan. at 185. This vitiates Murrow's claim of self-defense immunity.

*Conclusion*

The evidence at the immunity hearing was sufficient to establish probable cause under the totality of the circumstances that Murrow's actions were not subjectively or objectively reasonable. Murrow did not actually believe or reasonably believe that the amount of force he used was necessary to defend himself against Walters' imminent use of unlawful force. A person of ordinary prudence could thus conscientiously hold a reasonable belief in Murrow's guilt of aggravated battery. The State satisfied its negative burden to show probable cause that Murrow's use of force in self-defense was not statutorily justified, so Murrow is not immune from criminal prosecution under K.S.A. 21-5231(a). Whether Murrow was justified in his use of self-defense is a question for the jury.

15

Accordingly, we reverse the district court's dismissal of the charges against Murrow and remand the case with directions to reinstate the complaint and to proceed with prosecution.

Reversed and remanded with directions.